Susan K. GANDER and Robert J. Gander, Appellants,

v.

MR. STEAK OF SUN RAY, INC., a Minnesota corporation, Appellee.

No. 84–5200.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1985.

Decided Oct. 14, 1985.

Mark R. Miller, Minneapolis, Minn., for appellant.

Roger H. Gross, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and PHILLIPS,* Senior Circuit Judge.

LAY, Chief Judge.

Susan K. Gander and Robert J. Gander appeal from an order denying them a new trial after a judgment entered against Mr. Steak, Inc. on a $2,000 jury verdict for personal injury. The Ganders complain that the verdict was grossly inadequate, being less than their special damages incurred. They cite as error the refusal of the trial judge, the Honorable Diana E. Murphy presiding, to give two requested instructions relating to causation. Upon review of the record and proceedings at trial we find no prejudicial error and affirm the judgment of the district court.

On September 24, 1977, Mrs. Gander was having dinner at a Mr. Steak restaurant in St. Paul, Minnesota. Mrs. Gander was sitting in a booth when a picture fell off the wall, striking her on the back of the head and across the top of her left shoulder.

---

* The HONORABLE HARRY PHILLIPS, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation. Judge Phillips participated in the oral argument and at conference agreed with the vote of the court. However, due to his untimely death he did not have an opportunity to review the opinion.

The picture weighed 22 ounces and fell from a height some 3 to 18 inches above her head. She went to an emergency ward at a nearby hospital because she was experiencing considerable pain and stiffness in her neck. The examination revealed bruising and a lump in the area struck. Beginning the next day, Mrs. Gander began suffering from headaches, pains in her eyes, blurry vision, and pain in her neck, shoulder, and left arm. She first saw an orthopedic physician, Dr. Larkin, on October 3, 1977 who advised her to wear a cervical collar. She wore the collar for three months. She ceased wearing the collar when her neck began feeling a little better, but she continued to experience problems with her shoulder and left arm.

On March 2, 1978, while driving an automobile, Mrs. Gander was struck from behind when she was stopped at a stop sign. No damage was caused to either auto, but Mrs. Gander immediately went to a local hospital because of increased pain in her neck. She was advised to wear her cervical collar again, which she did for two or three weeks thereafter. She returned to see Dr. Larkin in November, 1978 and again in January, 1979, when he recommended that she undertake a physical therapy program. She visited his office every two or three days for treatment and used a home traction device every day.

A month later, Dr. Larkin referred her to Dr. Hartwig, an orthopedic surgeon, who diagnosed a thoracic outlet syndrome and a questionable cervical disc syndrome. On June 28, 1979 Mrs. Gander underwent a rib resection performed by Dr. Hartwig to relieve the symptoms of thoracic outlet syndrome. Both Dr. Larkin and Dr. Hartwig continued to see her thereafter, as Mrs. Gander's problems with her neck and arm persisted. Both physicians then diagnosed a recurrent thoracic outlet syndrome. Dr. Larkin also believed that she suffered from residual neck injury, a bulging disc, and residual nerve damage from the surgery.

Mr. and Mrs. Gander then commenced this diversity action against Mr. Steak to recover for Susan Gander's personal injuries and for Robert Gander's medical expenses and loss of consortium. The fundamental issue before the jury was the question of the cause of Mrs. Gander's disability. The plaintiffs urged that her condition was substantially caused by the blow from the picture. Both Dr. Larkin and Dr. Hartwig testified that they believed that the necessity for Mrs. Gander's surgery and her resultant symptoms were attributable to the injury Mrs. Gander received at the steak house. The Ganders also urged that even if the blow from the picture did not contribute to the March, 1979 automobile accident, Mr. Steak was still liable for any aggravation of her condition the accident caused. Further, they sought an instruction that the defendant was liable for aggravation due to her subsequent medical treatment.

Plaintiffs' theory of causation was challenged by Mr. Steak. It sought to demonstrate, by cross examination of plaintiffs' two physicians and the testimony of its own medical expert, that Mrs. Gander's injury was caused either by the March, 1978 automobile accident, or was a congenital condition. The defendant elicited testimony from Dr. Larkin that symptoms associated with trauma induced thoracic outlet syndrome are generally evident within six months of the trauma, and that Mrs. Gander tested negatively for the syndrome 13 months after the picture struck her. Moreover, defendant's expert neurologist, Dr. Johnson, as well as Dr. Hartwig, conceded that thoracic outlet syndrome can occur in many cases without trauma by congenital predisposition. Dr. Hartwig also conceded that his opinion as to the cause of Mrs. Gander's condition was based on the mistaken assumption that the picture weighed three pounds and fell two to three feet. Dr. Johnson further stated that much of Mrs. Gander's trouble was related to scar tissue formed after Mrs. Gander's surgery.

After the close of testimony, the plaintiffs' counsel requested the following instruction concerning the legal effect of the automobile accident:

When a person receives an injury through the negligent act of another, and the injury is afterward aggravated by an accident not the result of the injured person's own negligence, the injured person may recover for the entire injury sustained, as the law regards the probability of such aggravation as a consequent and material result likely to flow from the original injury.

Counsel also requested the following instruction on liability for aggravation by subsequent medical treatment:

When a person receives an injury through the negligent act of another, if it is found that the person's injury was in any respect increased or aggravated by the nature and extent of the medical care and treatment that was received, that circumstance shall not diminish the extent of the damages to which the person is entitled to as compensation for the injuries resulting from the negligent act, as the wrongdoer is liable for the aggravation of the injury for which medical treatment was required.

The trial court refused to give these two instructions, however, and gave instructions on proximate cause as follows:

A direct cause is a cause which had a substantial part in bringing about the injury, either immediately or through happenings which follow one after another.

However, a cause is not a direct cause when there is a superseding cause. For a cause to be a superseding cause, all the following elements must be present. And then there are four elements.

1. Its harmful effects must have occurred after the original negligence.

2. It must not have been brought about by the original negligence.

3. It must actively work to bring about a result which would not otherwise have followed from the original negligence.

4. It must not have been reasonably foreseeable by the original wrongdoer.

The plaintiffs contend that submission of the issue of causation on that instruction alone was reversible error.

Mr. Steak first urges that the plaintiffs failed to properly object to the court's refusal to give their requested instructions as required under Fed.R.Civ.P. 51. It argues that the Ganders therefore should be deemed to have waived their claims of error. We find this argument persuasive as to the instruction on liability for aggravation from the automobile accident. However, we believe that plaintiffs sufficiently excepted to the court's failure to give the requested instruction on the effect of the medical treatment to permit review of that issue.

■ Under rule 51, "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Such an objection is required whether or not a party has made a proper request for an instruction which the court refuses to give. The reason for that rule is that the substance of the court's charge may obviate a party's requested instruction, and, under such circumstances, the request will be deemed waived unless further objection is made. *See McCamley v. Shockey*, 636 F.2d 256, 260 n. 2 (8th Cir. 1981) *quoting Cone v. Beneficial Standard Life Insurance Co.*, 388 F.2d 456, 461–62 (8th Cir.1968). Only if failure to give the instruction constitutes plain error amounting to a miscarriage of justice may we overlook an insufficient objection. *Starr v. J. Hacker Co., Inc.*, 688 F.2d 78, 81 (8th Cir.1982); *Rowe International, Inc. v. J–B Enterprises, Inc.*, 647 F.2d 830, 835 (8th Cir.1981).

■ The only discussion regarding the requested instruction on the effect of the auto accident was in the judge's chambers before the jury was charged. Plaintiffs' counsel did say at that time that he would not concede that the instruction should not be given, but made no mention of that instruction thereafter. In contrast, he did renew the request for the instruction concerning medical treatment immediately be-

fore the charge, after defendant's final argument. The court denied this request; however, plaintiffs' counsel made no mention of the second accident theory at that time. We thus believe plaintiffs did not adequately pursue the instruction as to the auto accident.[1]

■ We find that counsel did, however, adequately call to the court's attention the ·request concerning the effect of alleged aggravation of an injury by a doctor's subsequent treatment. Although plaintiffs' counsel made no further objection after the charge, he had renewed his request for the medical treatment instruction after defendant's closing argument. There can be no question that the court had the opportunity to reconsider the request, and, in light of the instruction given, refused to submit it.

■ Nonetheless we find the trial court did not err in failing to give this instruction. A party is entitled to an instruction reflecting that party's theory of the case if it is legally correct and there is evidence to support it. *Board of Water Works Trustees v. Alvord, Burdick & Howson*, 706 F.2d 820, 823 (8th Cir.1983). However, in the present case the requested medical treatment instruction does not comport with plaintiffs' theory of their case. Plaintiffs' theory was that Mrs. Gander's injuries and resultant treatment were all attributable to the picture falling incident, and they elicited testimony from their experts supporting that theory. There was no attempt by plaintiffs to show that either physician's treatment aggravated the inju-

ry. Nor does defendant's argument that Mrs. Gander's doctors were mistaken as to the cause of her injuries trigger or change the theory of her case. The defendant's argument that the thoracic outlet syndrome was not causally related to the accident at Mr. Steak allows it to argue that Mrs. Gander's condition is attributable to an unspecified occurrence of the syndrome and her surgery. To that effect, defendant introduced evidence that Dr. Hartwig's opinion on causation was based on a mistaken factual assumption of the size of the picture and the distance it fell. Nor was it Dr. Johnson's opinion that Dr. Hartwig should not have done the surgery, but only that any thoracic outlet syndrome was unrelated to the blow from the picture. This testimony does not suggest that the defendant is arguing her condition was caused by the defendant's negligence and was enhanced by her medical treatment. Since the evidence failed to support plaintiffs' requested instruction, the trial court's refusal to give it was not error.

■ Nor can it be said that no reasonable jury could have reached this verdict on the evidence before it. This case is no different from the hundreds of personal injury cases tried before juries in state or federal court. The issue encountered was whether the initial trauma caused all of the medical problems and symptoms Mrs. Gander experienced. Resolution of the conflicting evidence on this issue lay peculiarly in the province of the jury, having had the opportunity to evaluate the witnesses' de-

---

1. Nor do we find there was plain error in refusing to instruct the jury with the plaintiff's theory of its case. The facts do not support plaintiff's theory. There is no evidence that plaintiff's "weakened condition" was causally related to the automobile accident. Plaintiff relies on cases which support the theory that a weakened condition, if causally related to the defendant's original negligence, contributing to a second injury makes the original tortfeasor liable for the whole of the aggravated injury. *See Stephenson v. F.W. Woolworth Co.*, 277 Minn. 190, 152 N.W.2d 138 (1967); *Campbell v. Brown*, 276 Mich. 449, 267 N.W. 877 (1936); *Stahl v. Southern Michigan Railway Co.*, 211 Mich. 350, 178 N.W. 710 (1920). This is not such a case. The evidence here relates only to

possible aggravation of a previous condition. Under those circumstances, the second tortfeasor may be liable for the aggravation under the theory that defendants take plaintiffs as they find them. *See* Restatement (Second) of Torts § 461 (1965). But the converse of this proposition is not necessarily true. The original tortfeasor is not liable for the aggravated injury caused by a superceding and independent cause, where the injury itself was not a substantial factor in causing the accident. *See Hafner v. Iverson*, 343 N.W.2d 634 (Minn.1984); *Rieger v. Zackoski*, 321 N.W.2d 16 (Minn.1982); *see also* Restatement (Second) of Torts §§ 442, 447 (1965). The evidence fails to show plaintiff's alleged "weakened condition" of the neck in any way was causally related to the second accident.

meanor and pass on their credibility. Both attorneys had the opportunity to sum up their evidence and provide argument as to whether their theory of the case was credible or not. It is obvious that the jury gave greater credence to defendant's evidence and argument than that of the plaintiffs'. It is not for us to disturb that determination.

We find the issue of fact properly submitted to the jury and no error in the instructions.

Judgment affirmed.