Donald J. KENNA, the surviving husband of Margaret A. Kenna, representing all persons interested under North Dakota Century Code Chapter 32–21 and as the Personal Representative of the Estate of Margaret A. Kenna pursuant to North Dakota Century Code Section 28–01–26, Plaintiff–Appellant,

v.

SO–FRO FABRICS, INC., a Nevada corporation, Defendant–Appellee.

No. 93–1192.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1993.

Decided March 14, 1994.

Duane R. Breitling, West Fargo, ND, argued, for plaintiff-appellant.

Mark R. Hanson, Fargo, ND, argued, for defendant-appellee.

Before BOWMAN, Circuit Judge, LAY, and CAMPBELL,* Senior Circuit Judges.

LAY, Senior Circuit Judge.

Donald J. Kenna brought this diversity action against So–Fro Fabrics, Inc. ("So–Fro") to recover for the wrongful death of his wife, Margaret A. Kenna, and for the injuries she sustained·from the time of So–Fro's alleged negligence until her death. The district court of North Dakota determined that Minnesota law applied to the claims, and subsequently granted summary judgment in favor of So–Fro. Mr. Kenna appeals the district court's rulings on the choice of law issue and the granting of summary judgment. We reverse.

## I. BACKGROUND

So–Fro is a Nevada corporation licensed to do business and conducting business in a number of states, including Minnesota and North Dakota. The So–Fro retail store involved in this suit is located in Moorhead, Minnesota. So–Fro had mailed an advertisement flyer to the Kennas at their home in Fargo, North Dakota. On July 5, 1989, after receiving the flyer, Ms. Kenna visited the So–Fro store in Minnesota. As she was walking down an aisle following a So–Fro employee, Ms. Kenna allegedly tripped over a box that extended into the aisle and fell. Ms. Kenna was seventy-two years old at the time. As a result of the fall, she fractured her hip. Ms. Kenna was transported by ambulance to Fargo and received medical treatment at the Dakota Hospital in Fargo.

Ms. Kenna's doctor initially wanted to avoid surgery because a person of Ms. Kenna's age faces increased risks, including that of developing post-surgical pulmonary emboli, an obstruction of an artery generally caused by a blood clot. After two months of

* The HONORABLE LEVIN H. CAMPBELL, Senior United States Circuit Judge for the United States Court of Appeals, First Circuit, sitting by designation.

conservative, non-surgical treatment, her doctor determined that a hip replacement was necessary, and Ms. Kenna underwent hip replacement surgery in mid-September of 1989. Shortly after the surgery she developed a pulmonary embolus. Because of this, her doctor prescribed Coumadin, an anti-coagulant, to help treat the clot. Ms. Kenna's condition thereafter improved and by mid-December of 1989, she was ambulatory without the aid of crutches, a walker or a cane.

On December 18, 1989, while attending church in Fargo, Ms. Kenna fell on the steps as she descended from the altar. She fell on her face, cutting her nose, but was able to leave the church on her own and return to her home. After retiring for the night and at approximately 12:30 a.m. on December 19, she awoke in great distress. She was taken by ambulance to the Dakota Hospital in Fargo where she was treated by Dr. Becker, a neurosurgeon. Ms. Kenna was found to have a hemorrhage inside her head. By the time she was operated on to relieve the pressure on her brain from the acute subdural hematoma, Ms. Kenna was in a coma. She never regained consciousness after the surgery and died on December 20, 1989.

Dr. Becker testified by deposition that Ms. Kenna's "normal defense mechanisms were disturbed by the presence of the Coumadin ... leading to some hemorrhage, which under normal circumstances she might have been able to handle in a nonsignificant way, was then developed into a life-threatening situation." Dr. Becker further observed that "it would be unlikely without the Coumadin being present that she would have gone on to develop the size of the hematoma and the

life-threatening subdural" that developed. He opined that, based on reasonable medical certainty, the Coumadin "played a substantial role in ... her death."

Mr. Kenna brought suit claiming that So–Fro's alleged negligence was a proximate cause of Ms. Kenna's death. In his amended complaint, Mr. Kenna sought damages for Ms. Kenna's wrongful death, pursuant to North Dakota Century Code §§ 32–21–01 & –02 (1976 & Supp.1993), and for her pain and suffering for the five and a half months between her fall at So–Fro and her death, pursuant to North Dakota Century Code § 28–01–26.1 (1991). So–Fro responded that the fall at the church was an intervening, superseding cause which relieves So–Fro of liability for its alleged negligence, and furthermore that Minnesota law governs the dispute.[1]

Upon a joint motion of the parties on the choice of law issue, the district court ruled that Minnesota law controls all substantive issues of the case. Subsequently, So–Fro moved for summary judgment. The district court, relying on Minnesota law, granted summary judgment in favor of So–Fro. This appeal followed.

## II. THE CHOICE OF LAW ISSUE

■ Under North Dakota's rule for conflict of laws, the district court determined that Minnesota law applies to the plaintiff's claims. The district court's decision, in applying North Dakota's conflicts of law rule, is subject to *de novo* review. *See Birnstill v. Home Sav. of Am.*, 907 F.2d 795, 797 (8th Cir.1990).

1. Minnesota law, in contrast to North Dakota law, places greater limits on recovery for wrongful death claims. With respect to wrongful death actions, North Dakota law allows for recovery of pecuniary losses as well as for loss of society, comfort, companionship and mental anguish. *See* N.D.Cent.Code §§ 32–21–01 & –02 (1976 & Supp.1993); *Hopkins v. McBane*, 427 N.W.2d 85, 90–94 (N.D.1988). Minnesota limits wrongful death recovery to pecuniary losses. *See* Minn. Stat. § 573.02 subd. 1 (1992). Pecuniary loss in Minnesota includes compensation for loss of comfort, assistance and companionship. *Cummins v. Rachner*, 257 N.W.2d 808, 815 (Minn. 1977).

Also, Minnesota law allows for recovery for either wrongful death or personal injury, but not both. Under Minnesota law, a cause of action for personal injury usually "dies with the person ... in whose favor it exists." *See* Minn.Stat. § 573.01 (1992). Minnesota does allow an action to survive, however, if the person "dies from a cause unrelated to those injuries." *See id.* § 573.02 subd. 2. North Dakota provides for the survival of Ms. Kenna's personal injury claim. *See* N.D.Cent.Code § 28–01–26.1 (1991) ("No action ... abates by the death of a party.").

North Dakota has abandoned the rule of *lex loci delicti,* or the law of the place where the tort was committed, and has adopted a rule of "choice-influencing considerations."[2] *See Issendorf v. Olson,* 194 N.W.2d 750, 755 & 756 (N.D.1972); *see also* Robert A. Leflar, *Choice–Influencing Considerations in Conflicts Law,* 41 N.Y.U.L.Rev. 267, 282 (1966). The choice-influencing considerations reflect a balancing approach used to determine "which of two or more jurisdictions 'has the more significant interest with reference to a particular issue.'" *Plante v. Columbia Paints,* 494 N.W.2d 140, 141 (N.D.1992) (citation omitted).

The five choice-influencing factors followed by the North Dakota Supreme Court are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Issendorf,* 194 N.W.2d at 755. Although all of the choice-influencing factors should be considered, their relative importance varies with the area of law involved. *Plante,* 494 N.W.2d at 142. In tort actions, the fourth and fifth factors are the most significant. *See DeRemer v. Pacific Intermountain Express Co.,* 353 N.W.2d 694, 697 (Minn.Ct.App.1984); *Brown v. Church of the Holy Name of Jesus,* 105 R.I. 322, 252 A.2d 176, 180–81 (1969); *see also Hataway v. McKinley,* 830 S.W.2d 53, 58 (Tenn.1992) (noting that the "first two factors are usually irrelevant in torts cases").

### A. Predictability of Results

Predictability of results plays an important role when parties enter into contracts, but accidents are not planned. *See Clark v. Clark,* 107 N.H. 351, 222 A.2d 205, 208 (1966). Parties do not commit torts in one state rather than another because of that state's tort laws. In the present case, So–Fro could anticipate being sued under either North Dakota or Minnesota law. So–Fro is licensed to do business and is doing business in both Minnesota and North Dakota, its Moorhead store is located on the border of Minnesota and North Dakota, and the Moorhead store solicits business from North Dakota residents. We deem this first factor to be of little relevance.

### B. Maintenance of Interstate and International Order

Similarly, maintenance of interstate and international order is only minimally implicated where torts are involved. In the present case, it cannot be said that harmonious relations between states will be advanced by applying Minnesota rather than North Dakota law, or vice versa.

### C. Simplification of the Judicial Task

Simplification of the judicial task is not of great significance in this case. Although the laws of Minnesota and North Dakota differ, the court could apply either law without serious difficulty. If anything, this consideration favors North Dakota law. *See Plante,* 494 N.W.2d at 143 ("'It will usually be easier for the forum court to apply its own law than any other.'" (citation omitted)). Under Minnesota law, the plaintiff would be put in the awkward position of arguing, for purposes of the wrongful death action, that So–Fro's negligence caused Ms. Kenna's death, and simultaneously arguing that in the event the jury finds that So–Fro's negligence did not cause Ms. Kenna's death, the plaintiff should recover under the survival action. *See* Minn.Stat. §§ 573.01 & 573.02 subd. 2 (1992). Hence, the jury instructions would be complicated because the judge would have to explain the alternate methods of recovery for wrongful death and survival of personal injury actions.

---

**2.** So–Fro asserts that the choice-influencing factors do not apply to the statutorily created tort of wrongful death, citing the worker's compensation case *Breitwieser v. State,* 62 N.W.2d 900, 904 (N.D.1954). Since *Breitwieser,* North Dakota has adopted the choice-influencing approach for tort claims, *see Issendorf v. Olson,* 194 N.W.2d 750, 756 (N.D.1972), and subsequently for contract claims, *see Plante v. Columbia Paints,* 494 N.W.2d 140, 141 (N.D.1992). We have no reason to believe that North Dakota would alter its conflict of law choice only in the context of wrongful death actions.

## D. Advancement of the Forum's Governmental Interests

The next consideration is advancement of the forum's governmental interest. North Dakota clearly has an interest in protecting its residents who are victims of torts. *See Bryant v. Silverman,* 146 Ariz. 41, 45, 703 P.2d 1190, 1194 (1985) ("[T]he state where the injury occurs does not have a strong interest in compensation if the injured plaintiff is a non-resident. Compensation of an injured plaintiff is primarily a concern of the state in which plaintiff is domiciled." (citations omitted)). North Dakota's concern for tort victims is evidenced by its laws which provide for broad recovery in wrongful death claims, as well as allowing survival actions to be maintained concurrently with wrongful death actions. *See* N.D.Cent.Code §§ 28–01–26.1, 32–21–01 & –02. One of North Dakota's purposes presumably is to deter wrongful conduct, and increased recovery can only strengthen the deterrence. *See Johnson v. Spider Staging Corp.,* 87 Wash.2d 577, 555 P.2d 997, 1002 (1976). Minnesota, on the other hand, has an interest in limiting wrongful death damages and survival actions. It wants to protect defendants from excessive financial burdens. *See id.*

We conclude that, on balance, North Dakota's interests are more deeply affected than Minnesota's in the present case. In addition to North Dakota's interest in compensating tort victims, most of the contacts in this case are with North Dakota. North Dakota's contacts are: (1) the plaintiff is and the decedent was a resident of North Dakota; (2) the defendant is licensed to do business and is conducting business in North Dakota; (3) the So–Fro store involved in this case solicited business from the decedent in North Dakota; (4) the decedent left her North Dakota home to shop at the So–Fro store in Minnesota and intended to return to North Dakota upon completion of her shopping; (5) the decedent's medical treatment following her initial fall occurred in North Dakota; (6) the decedent's subsequent medical treatment, including hip replacement surgery, took place in North Dakota; (7) the decedent's second fall occurred in North Dakota; (8) the decedent received medical treatment in North Dakota after her second fall; and (9) the decedent died in North Dakota.

Minnesota's contacts are: (1) the defendant, a Nevada corporation with its principal place of business in California, is licensed to do business and is conducting business in Minnesota; and (2) the decedent's initial fall occurred in Moorhead, Minnesota, on the border of North Dakota.

In light of North Dakota's strong interest in compensating tort victims, and because virtually all contacts other than the place of initial injury occurred in North Dakota, we find that North Dakota's governmental interests are advanced by the application of North Dakota law.

## E. Application of the Better Rule of Law

North Dakota and Minnesota have similar rules regarding negligence and causation, but they differ with respect to compensation for wrongful death and treatment of survival actions. Insofar as compensation for wrongful death is concerned, North Dakota has made a conscious decision to allow broader recovery. The North Dakota Supreme Court noted that rules limiting damages in wrongful death actions "were products of their times" and that "[f]ortunately, those social conditions no longer exist in our society. Unfortunately, rules imposed by judicial decisions borne of those social conditions persist today." *Hopkins v. McBane,* 427 N.W.2d 85, 89 & 90 (N.D.1988). Minnesota's law would limit the plaintiff's recovery on his wrongful death claim, and would not allow the plaintiff to recover for both wrongful death and for Ms. Kenna's personal injuries while she was alive.

Although the two states have reached different balances with respect to the compensation of victims and the protection of defendants against excessive verdicts, we are not in a position to decide that either one is the better rule of law. Hence, we look to the first four factors, particularly the advancement of North Dakota's governmental interest, and hold that North Dakota has the most significant interest in this case and its laws should be applied.

Our conclusion is in accord with North Dakota's decision in *Issendorf*, 194 N.W.2d at 755–56. *Issendorf* involved an automobile accident that occurred in Minnesota. The plaintiff and defendant were North Dakota residents, the car was registered in North Dakota, and the trip began and was to end in North Dakota. The plaintiff had driven into Minnesota to shop for food. The court found that North Dakota's contacts were more significant than that of Minnesota, reasoning that the "locus of the accident was fortuitous, having resulted from a brief journey into Minnesota." *Issendorf*, 194 N.W.2d at 755.

Similarly, in this case Ms. Kenna was on a brief journey into Minnesota. Her trip began and was to end in North Dakota, and the fact that her fall occurred in Minnesota, much as the automobile accident in *Issendorf* took place in Minnesota, is fortuitous. *See DeRemer v. Pacific Intermountain Express Co.*, 353 N.W.2d 694, 698 (Minn.Ct.App.1984) (applying Minnesota law to automobile accident that occurred in South Dakota; the plaintiff was a Minnesota resident, the trip originated and was to end in Minnesota, most medical care occurred in Minnesota, and defendant was licensed to do business in Minnesota); *In re Estate of Wood*, 122 N.H. 956, 453 A.2d 1251, 1252 (1982) (applying New Hampshire law rather than Massachusetts law where the only contact with Massachusetts was the location of the fatal accident).

We conclude that the district court erred in finding that Minnesota law, rather than North Dakota law, applies to this case.

## III. THE WRONGFUL DEATH ACTION

■ The district court granted summary judgment in favor of So–Fro on the wrongful death action on the ground that Ms. Kenna's second fall at the church constituted, as a matter of law, an intervening, superseding cause that broke the chain of causation from

So–Fro's alleged negligence. We respectfully disagree; we hold that the plaintiff's evidence creates a genuine issue of material fact for the jury to decide.

The district court ruled that, because the initial accident occurred in Minnesota, its law governed the conduct of the parties. As we have discussed, we find that North Dakota's law of conflicts of law requires the court to apply North Dakota law. It would appear, however, under the law of either North Dakota or Minnesota, the court should have submitted the issue of causation relating to Ms. Kenna's death to the jury.

North Dakota describes an intervening, superseding cause as follows:

> An intervening efficient cause which relieves a negligent wrongdoer of liability is, and must be, a new and independent force which breaks the causal connection between the original wrong and injury, and which itself becomes the direct and immediate cause of the injury. It must be more than a mere concurrent and contributing cause; it must be a responsible cause or a superseding cause, that is, one which has superseded the original act or been itself responsible for the injury. One whose negligence combines or concurs with an independent intervening cause in producing the injury is liable, even though his negligence alone, without such independent intervening cause, would not have produced the injury.

*Chicago, Milwaukee, St. Paul and Pac. R.R. Co. v. Johnston's Fuel Liners, Inc.*, 122 N.W.2d 140, 148 (N.D.1963) (citation omitted). In applying these principles the Supreme Court of North Dakota has observed: "To be a superseding cause it must alone, and without the slightest aid from the act of the defendant, produce the injury...." *Boss v. Northern Pac. R. Co.*, 49 N.W. 655, 658 (N.D.1891).[3]

---

**3.** The Minnesota Supreme Court uses a four step analysis which basically incorporates the same principles. An intervening cause, to be a superseding cause, must meet the following requirements:

(1) Its harmful effects must have occurred after the original negligence; (2) it must not have been brought about by the original negli-

gence; (3) it must actively work to bring about a result which would not otherwise have followed from the original negligence; and (4) it must not have been reasonably foreseeable by the original wrongdoer.

*Regan v. Stromberg*, 285 N.W.2d 97, 100 (Minn. 1979) (quoting *Kroeger v. Lee*, 270 Minn. 75, 132 N.W.2d 727, 729–30 (1965)).

In the fascinating lore of judicial decisions dealing with intervening cause, there are innumerable factual scenarios reaching varying results. We need only to decide under the facts presented whether under North Dakota law the issue of causation should be submitted as one of fact to the jury.

In *Wolff v. Light,* 156 N.W.2d 175 (N.D. 1968), the defendant drove his car through a plate glass window. A police officer responded to the scene and attempted to remove a piece of glass from the top of the window. In doing so another piece of glass fell and severely cut the officer's wrist. *Id.* at 176. The officer sued the driver of the vehicle, and the district court subsequently granted summary judgment in favor of the driver. On appeal, the driver argued that the officer's conduct was an intervening, superseding cause and that the driver could not foresee that a police officer would negligently attempt to remove the glass. *Id.* at 180. The North Dakota Supreme Court reversed the grant of summary judgment and stated: "[T]he question whether the conduct of the plaintiff was a sufficient intervening cause, as a new and independent force, to break the chain of causation between the negligence of the defendant and the plaintiff's injuries, should be left to the jury to determine." *Id.* at 181–82.

More recently the North Dakota Supreme Court, in *First Trust Co. of North Dakota v. Scheels Hardware & Sports Shop, Inc.,* 429 N.W.2d 5, 9 (N.D.1988), quoted with approval section 442A of the Restatement (Second) of

Torts, which provides: "Where the negligent conduct of the actor creates or increases the foreseeable risk of harm through the intervention of another force, and is a substantial factor in causing the harm, such intervention is not a superseding cause." Restatement (Second) of Torts § 442A (1965). In *First Trust,* the North Dakota Supreme Court held that a jury should be instructed, in passing on issues of causation, foreseeable misuse of a chattel (a gun) cannot be a superseding cause which will extinguish a defendant's liability for harm caused by the misuse. 429 N.W.2d at 9. Also relevant is section 442B, which states:

> Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.

Restatement (Second) of Torts § 442B (1965).[4]

So–Fro argues that for it to be held liable for Ms. Kenna's death, its alleged negligence must have caused the second accident or made the accident more likely to occur, rather than causing the harm or making the accident more harmful. In other words, Ms. Kenna's taking of Coumadin must have in some way caused the second fall to occur. So–Fro asserts the plaintiff cannot recover

---

The Minnesota Supreme Court, in applying these same principles in *Rieger v. Zackoski,* 321 N.W.2d 16, 21 (Minn.1982), observed that it "is incorrect ... that the *specific* conduct of the third party must be foreseeable. It is sufficient ... that the unreasonable risk of harm attributable to the third party's conduct be foreseeable."

4. Minnesota cases similarly support submission of the causation issue to the jury. In *Lamke v. Louden,* 269 N.W.2d 53 (Minn.1978), the plaintiff was injured in an automobile accident and gangrene developed in one leg, requiring that her leg be amputated below the knee. The plaintiff was confined to a wheelchair and approximately a year and a half later the wheels of the wheelchair rolled over the other foot. Gangrene developed, necessitating amputation of the second leg below the knee. *Id.* at 55. The Minnesota Supreme Court found that the question of causation was one of fact that had properly been submitted to

the jury. *Id.* at 56; *see also Gander v. Mr. Steak of Sun Ray, Inc.,* 774 F.2d 920 (8th Cir.1985) (under Minnesota law, the issue of superseding cause submitted to the jury).

In the present case, So–Fro looks for support in *Gander* dicta appearing in a footnote: "The original tortfeasor is not liable for the aggravated injury caused by a superceding and independent cause, where the injury itself was not a substantial factor in causing the accident." *Id.* at 924 n. 1. This statement must be read in proper context. It was written in response to the plaintiff's reliance on cases where the original injury contributed to the second accident. Our statement in *Gander,* taken out of context, is obviously too broad. It is not to be read to the exclusion of all other legal principles dealing with intervening cause applicable to differing factual situations.

simply by showing that the taking of Coumadin caused the subdural hematoma or made Ms. Kenna's second fall more dangerous. We disagree.

So–Fro may be liable if its negligence creates or increases the risk of a particular *harm* (the subdural hematoma and Ms. Kenna's subsequent death), and is a substantial factor in causing that *harm*. *See* Restatement (Second) of Torts § 442B. If the ultimate harm, not just the manner in which the harm is brought about, is causally related to So–Fro's alleged negligence, it may be held liable.

According to the plaintiff's evidence and theory of the case, Ms. Kenna's taking of Coumadin was necessitated by the hip surgery which was causally related to the fall at the So–Fro store. The plaintiff contends that if Ms. Kenna had not been taking Coumadin, her second fall would not have produced the subdural hematoma and the resulting death. For Ms. Kenna's second fall to be a superseding cause which relieves So–Fro of liability, the second fall would have to "alone, and without the slightest aid from the act of defendant, produce the injury." *See Boss v. Northern Pac. R. Co.*, 49 N.W. 655, 658 (N.D.1891). Yet Dr. Becker testified that the Coumadin played a substantial role in Ms. Kenna's death, and that it is unlikely that the life-threatening situation would have developed if Ms. Kenna had not been taking Coumadin.

In holding that the plaintiff has presented a jury question on the issue of causation, we wish to make clear that a jury may still find that Ms. Kenna's death was not a normal and probable result of the first accident, thus relieving So–Fro of liability. If the jury finds under the principles of intervening cause that the fall in church was too extraordinary, the overall harm was unforeseeable, it may still deny recovery. The court's instruction should make this clear to the jury.

## IV. THE SURVIVAL ACTION

■ The district court, in granting summary judgment in favor of So–Fro on the wrongful death claim, dismissed plaintiff's complaint in entirety, including the survival action. Under North Dakota law, which we have determined applies to this case, the plaintiff is permitted to maintain the survival action. *See* N.D.Cent.Code § 28–01–26.1. Thus, the survival action is reinstated.

Even under Minnesota law, which the district court applied, it was erroneous for the court to dismiss the plaintiff's survival action. The district court found, as a matter of law, that So–Fro's alleged negligence was not causally connected to Ms. Kenna's death. In light of this finding, the district court should have allowed Mr. Kenna to proceed with the survival action, because Minnesota allows a personal injury action to survive an individual's death if the person "dies from a cause unrelated to those injuries." *See* Minn.Stat. § 573.02 subd. 2.

## CONCLUSION

Applying North Dakota's choice of law rules, we find that North Dakota law should govern this action. We further find that it is a question of fact for the jury whether the defendant's alleged negligence was a proximate cause of Ms. Kenna's death. Additionally, the plaintiff's survival action is reinstated.

Judgment reversed and remanded for further proceedings consistent with this opinion.