**Paul W. THORNTON, et al., Plaintiffs,**

v.

**SEA QUEST, INC., Defendant.**

No. 2:97–CV–232–RL–1.

United States District Court,
N.D. Indiana,
Hammond Division.

March 19, 1998.

Saul I. Ruman and Kevin C. Smith, Ruman Clements Tobin and Holub, Hammond, IN, David M. Hargis, Little Rock, AR, for Plaintiffs.

William J. Turbeville, II, Boca Raton, FL, Will Bond, Bond and O'Brien, Jacksonville, AR, for Defendant.

## ORDER

LOZANO, District Judge.

This matter is before the Court on Plaintiffs' Motion for the Determination or Choice of Arkansas Law or, in the Alternative, Motion for Leave to Amend, filed on October 20, 1997, and Defendant's Motion to Apply Indiana Law, filed on October 22, 1997. For the reasons set forth below, Plaintiffs' motion is **DENIED**, and Defendant's motion is **GRANTED**.

*BACKGROUND*

Paul Thornton ("Thornton") was a resident of Indiana, employed by Bethlehem Steel Company. Thornton was a relatively experienced scuba diver. He purchased two Sea Quest Spectrum scuba diving regulators from The Scuba Tank, a dive shop and authorized dealer of Sea Quest equipment in Valparaiso, Indiana. The Spectrum is a high performance regulator designed and manufactured in France by La Spirotechnique and delivered to Sea Quest in California under a private labeling agreement. Sea Quest delivered several Spectrums to various authorized dealers, including The Scuba Tank.

In May 1994, Thornton accompanied a group of divers from northern Indiana to Arkansas' Bull Shoals Lake to scuba dive. On the first dive of the trip, Thornton became separated from the rest of the group. Later, his diving partners found his dead body. Plaintiffs, Thornton's family members and the executor of his estate, believe that a malfunction of the regulator caused Thornton's death. All Plaintiffs (with the exception of the administrator of the estate) are residents of Pennsylvania.

Sea Quest is a California corporation primarily involved in the design, manufacture, importation, and distribution of scuba diving equipment. Sea Quest's principal place of business is California, although it transacts

business throughout the United States including Arkansas and Indiana.

Plaintiffs originally filed this wrongful death action based on products liability in the United States District Court for the Eastern District of Arkansas. The action was transferred to the Northern District of Indiana upon a motion by the Defendant for change of venue pursuant to 28 U.S.C. section 1404(a). The parties now request that the Court chose the appropriate law in this case.

*DISCUSSION*

As a general rule, "a district court whose jurisdiction is predicated on diversity of citizenship must apply the choice of law rules of the state in which it sits." *Hager v. Nat'l Union Elec. Co.,* 854 F.2d 259, 261 (7th Cir.1988). However, when a case comes to the court by way of a transfer of venue, the transferee court must apply the laws of the state of the transferor district court. *Ferens v. John Deere Co.,* 494 U.S. 516, 519, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); *Van Dusen v. Barrack,* 376 U.S. 612, 642, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Eckstein v. Balcor Film Investors,* 8 F.3d 1121, 1126 (7th Cir.1993). Because this case was transferred from the Eastern District of Arkansas based on 28 U.S.C. section 1404(a), this Court must apply the choice-of-law rules of the State of Arkansas. Plaintiffs insist that Arkansas' choice-of-law rules require that Arkansas' substantive law apply in this case. Sea Quest argues that based on Arkansas' choice-of-law rules, Indiana's substantive law should apply.

If Indiana's and Arkansas' wrongful death statutes are the same, there is a "false conflict" and the Court need not resolve the issue of which substantive law to apply. "'[F]alse conflict' really means 'no conflict of laws.' If the laws of both states relevant to these set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict between them." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 839 n. 20, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (dissenting opinion) (citing Robert A. Leflar, *American Conflicts of Law,* § 93, p. 188 (3d ed.1977)). *See also* E. Scoles and P. Hay, *Conflict of Laws,* § 2.6, p. 17 (1982) ("A 'false conflict' exists when the potentially applicable laws do not differ").

The parties agree that there is a true conflict between Indiana's and Arkansas' wrongful death statutes. According to Indiana's wrongful death statute, Ind.Code 34-1-1-2, the jury may calculate damages including "reasonable medical, hospital, funeral, and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission." Ind.Code § 34-1-1-2. These damages go to the decedent's estate. *Id.* Any remaining damages going to the "exclusive benefit of the widow or widower, as the case may be and to the dependent children, if any, or dependent next of kin." *Id.* If there is no widow or dependent, the measure of damages "shall be the total of the necessary and reasonable value of such hospitalization or hospital service, medical and surgical services, such funeral expenses, and such costs and expenses of administration, including attorney's fees." *Id.*

Arkansas' wrongful death statute states that beneficiaries include "the surviving spouse, children, father and mother, brothers and sisters of the deceased person, persons standing in loco parentis to the deceased person, and persons to whom the deceased stood in loco parentis." Ark.Code Ann. § 16-62-102(d). Damages may include "such damages as will be fair and just compensation for pecuniary injuries, including a spouse's loss of services and companionship of a deceased spouse and mental anguish resulting from the death to the surviving spouse and beneficiaries of the deceased person." Ark.Code § 16-62-102(f)(1). Under Indiana law, the potential beneficiaries are narrower and the potential recovery is less than in Arkansas. Thus, there is a true conflict between Indiana's and Arkansas' statutes, and the Court must determine which substantive law applies in this case.

The parties spend much of their briefs arguing over Arkansas' choice-of-law rules. Arkansas' choice-of-law rule for torts has changed over time. For many years, followed the rule of *lex loci delicti,* and applied the substantive law of the state where the accident occurred. *See Bell Transp. Co. v. Morehead,* 246 Ark. 170, 437 S.W.2d 234 (1969); *McGinty v. Ballentine Produce, Inc.,* 241 Ark. 533, 408 S.W.2d 891 (1966). In

*Wallis v. Mrs. Smith's Pie Co.*, the Supreme Court of Arkansas modified this choice-of-law rule, noting that "the traditional rule of lex loci delicti has fallen under much criticism in recent times." 261 Ark. 622, 550 S.W.2d 453, 456 (1977) (en banc).

In *Wallis*, two Arkansas residents brought actions against a corporation for injuries sustained in Missouri in a collision with a vehicle owned by the corporation's agent. *Id.* at 454. The agent was a Pennsylvania resident; the corporation had its principal place of business in Pennsylvania and was authorized to do business in Arkansas. *Id.* After analyzing the Second Restatement of Conflicts of Laws, as well as other states' rulings on the choice-of-law issues, the court adopted Dr. Robert A. Leflar's "choice-influencing considerations." *Id.* Leflar considers the following five factors to determine which state's substantive law to apply: (1) predictability of results; (2) maintenance of interstate and international orders; (3) simplification of judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Id.;* Robert A. Leflar, *Conflict of Laws: Arkansas— The Choice–Influencing Considerations*, 28 Ark. L.Rev. 199 (1974) (hereinafter "Leflar, *Conflict of Laws*"). After considering these five factors, the court determined that although the accident occurred in Missouri, Arkansas' substantive law would apply.[1]

The Supreme Court of Arkansas has followed Leflar's five "choice-influencing considerations" over the traditional rule of *lex loci delicti. See Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1321 (8th Cir.1991) (noting that *Wallis* replaced the traditional choice-of-law rules in tort actions with Leflar's approach). For example, in *Williams v. Carr*, the court found that Tennessee's substantive law applied where parties were Tennessee residents, although the automobile accident occurred in Arkansas. 263 Ark. 326, 565 S.W.2d 400, 403–04 (1978) (en banc) (discussing *Wallis* and Leflar's choice-influencing considerations). In *Schlemmer v. Fireman's Fund Ins. Co.*, the court noted that it had explicitly "adopted [Leflar's] approach in [*Wallis*], and have continued to use that ap-

proach." 292 Ark. 344, 730 S.W.2d 217, 219 (1987). The court went on to apply Tennessee's substantive law though the automobile accident in question occurred in Arkansas. *Id.*

Thus, this Court must consider Leflar's five "choice-influencing considerations" to determine which state's wrongful death statute applies. Although all factors should be considered, their relative importance varies depending upon the area of law involved. *See Kenna v. So–Fro Fabrics, Inc.*, 18 F.3d 623, 626 (8th Cir.1994); *DeRemer v. Pacific Intermountain Express Co.*, 353 N.W.2d 694, 697 (Minn.Ct.App.1984); *see also Hataway v. McKinley*, 830 S.W.2d 53, 58 (Tenn.1992) (noting that "the first two factors are usually irrelevant in torts cases").

(1) Predictability of Results.

According to the Supreme Court of Arkansas, "[t]he predictability consideration has no bearing on the unplanned injury." *Schlemmer*, 730 S.W.2d at 219; Leflar, *Conflicts of Laws*, 24 Ark. L.Rev. 199. This factor pertains to whether the choice of law was predictable before the time of the event giving rise to the cause of action, not to whether the choice was predictable after the transaction or event. *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 738 (8th Cir.1995). "By definition, the accidents are unplanned, so in the ordinary tort case the parties can claim no legitimate expectation that a certain state's law would apply in an action on an unanticipated event." *Id.* (discussing Leflar's choice-influencing considerations, which have been adopted in Minnesota).

Plaintiffs insist that this factor is important in products liability cases, and "should and does in fact, have more obvious relevance with regard to wrongful death." In support of its products liability argument, Plaintiffs cite Leflar. Leflar notes that parties do not plan accidents caused by defective products. Leflar, *Conflicts of Law*, 24 Ark. L.Rev. at 211. "Nevertheless, predictability may have some relevance after the event, [because] if governing law should be that of whatever

---

1. The Court also applied Missouri's rules of the road to questions of negligence based on the actual driving of the vehicles. *Wallis*, 550 S.W.2d at 458.

forum the plaintiff chooses, forum shopping will be encouraged." *Id.* (discussing a choice of law hypothetical which involved a products liability claim). If anything, this proposition swings in favor of Sea Quest. As a company with an authorized dealer of the product in question in Indiana, Sea Quest could reasonably expect to be sued based on the sale of it in that state. Sea Quest has no reason to predict that suit might be filed against it in Arkansas, when its regulator was sold to the decedent in Indiana. *See* Joseph Williams Singer, *A Pragmatic Guide To Conflicts,* 70 B.U.L.Rev. 731, 773 (1990). Moreover, Plaintiffs offer no authority to support their proposition that predictability is important in wrongful death actions. While the Supreme Court of Arkansas has not discussed this factor's importance in the context of a products liability or wrongful death action specifically, it did find that this factor was unimportant in a tort action. *See Schlemmer,* 730 S.W.2d at 219. It is hard to believe that while the Supreme Court of Arkansas finds a general tort to be unpredictable, it would find a tort resulting in death predictable. Thus, the predictability factor does not apply here.

(2) Maintenance of Interstate and International Orders.

In analyzing this factor, Sea Quest mentions that where a state has an overriding predominant interest in an action, interstate order can best be maintained by applying that state's substantive law. Plaintiffs note that this factor is often ignored, and seems to be merging into the fourth factor, which focuses on governmental interests. Based on the parties' comments, they seem to agree that this factor is subsumed by the fourth factor, "advancement of the forum government's interest." Regardless, at this point, it cannot be said that harmonious relations between states will be advanced by applying Arkansas law rather than Indiana law, or vice versa. *See Kenna,* 18 F.3d at 626.

(3) Simplification of the Judicial Task.

The Court will not be unduly complicated by the application of the law of either state. Both Indiana and Arkansas have wrongful death statutes. Regardless of which is chosen, the difficulty of application is similar. *See Nesladek,* 46 F.3d at 739 ("District Court is capable of determining, interpreting, and applying either [state law], since both are straight forward and there is no indication that the plain language of the statutes and the Court's interpretations of them are inadequate to provide the guidance a trial court might wish to have."). Therefore, neither of the states' laws are favored under this factor.

(4) Advancement of the Forum's Governmental Interest.

Arkansas' concern for tort victims is evidenced by its laws which provide for broad recovery in wrongful death claims. *See* Ark. Code Ann. § 16–62–102. One of Arkansas' purposes is presumably to deter wrongful conduct, and increased recovery can only strengthen the deterrence. *See Kenna,* 18 F.3d at 627; *Vickery v. Ballentine,* 293 Ark. 54, 732 S.W.2d 160, 162 (1987) (allowing punitive damages in wrongful death claims). But Arkansas interests in applying its laws are weak. Arkansas' wrongful death statute is mainly or even exclusively meant to compensate resident victims. Arkansas will not need to support Plaintiffs here if any undercompensation eventually requires them to take advantage of social services.

Plaintiffs argue that this case affects Arkansas' interests in tourism, especially at Bull Shoals Lake. They insist that "maintenance of scuba diving safety is an established interest in the State of Arkansas," because state police officials regulate diving at Bull Shoals Lake, and when a death occurs there the state crime laboratory often conducts the autopsies. If Plaintiffs had alleged that some negligent conduct occurred in Arkansas, their argument might have been more persuasive. However, product liability is the basis of this action. While Thornton's death occurred in Arkansas, it allegedly was due to conduct that occurred outside Arkansas' borders. If Thornton died as a result of a malfunctioning regulator, as Plaintiffs suggest, he could have died in any number of places. Thus, Arkansas' governmental interests do not seem closely related to this cause of action.

Indiana has an interest in protecting its residents who are victims of torts. *See Kenna,* 18 F.3d at 627; *Bryant v. Silverman,* 146

Ariz. 41, 703 P.2d 1190, 1194 (1985) ("[T]he state where the injury occurs does not have a strong interest in compensation if the injured plaintiff is a non-resident. [citations omitted] Compensation of an injured plaintiff is primarily a concern of the state in which plaintiff is domiciled."). Moreover, Indiana has a strong interest in preventing the sale of supposedly defective products within its borders.

After balancing the states' interests, the Court finds that Indiana's interests are more deeply affected than Arkansas' in this present case. While Arkansas has an interest in compensating tort victims, most of the contacts in this state are with Indiana. The decedent was an Indiana resident, Sea Quest is conducting business in Indiana through an authorized dealer, the allegedly defective product was sold to the decedent in Indiana, the decedent left Indiana to go scuba diving and intended to return to Indiana upon completing his vacation. The only contact Arkansas has with this case is that the decedent died there.

(5) Application of the Better Rule of Law.

Plaintiffs argue that the better rule of law is that which "more closely equates with modern theories of recovery allowed by each state in all other cases." According to Leflar,

It must not be automatically assumed that every court will regard its own law as better than that of other states. Courts sometimes realize that certain of their own laws, especially statutory ones, are archaic, anachronistic, out of keeping with the times.

*Schlemmer,* 730 S.W.2d at 219 (quoting Leflar, *Conflict of Laws,* 28 Ark. L.Rev. at 215). Leflar instructs the courts to choose as the better law that which makes "good socioeconomic sense for the time when the court speaks." *Nesladek,* 46 F.3d at 740 (quoting Robert A. Leflar, *Conflicts of Law: More on Choice–Influencing Considerations,* 54 Cal. L.Rev. 1584, 1588 (1966)).

Arkansas' wrongful death statute has become more liberal since its enactment in 1883. Arkansas' original wrongful death statute was limited to pecuniary losses suffered by the deceased widow or next of kin. *See* Barbara E. Lingle, *Allowing Fetal Wrongful Death Actions in Arkansas,* 44 Ark. L.Rev. 465, 470 (citing O. Harris, *Arkansas Wrongful Death Actions* § 2–1 at 5 (1984)). In 1899, Arkansas' legislature modified the statute to include a husband's right to recovery the death of his wife. *Id.* Both of these statutes were amended to allow recovery for mental anguish in 1949. *Id.* In 1957, the legislature repealed these statutes and replaced them with Arkansas' present wrongful death statute. *Id.* The current statute provides that every wrongful death action be brought in the name of the deceased's personal representative or heirs at law. Ark.Code Ann. § 16–62–102. Moreover, it allows the surviving spouse to recover for loss of the deceased's services and companionship and the surviving spouse and next of kin to recover for mental anguish. *Id.* Arkansas also allows punitive damages in wrongful death actions. *Vickery,* 732 S.W.2d at 162.

In contrast, Indiana's law is much more conservative.

The clear policy in Indiana as expressed in the decisions and statutes is that recovery of damages in wrongful death actions is only for the purpose of compensating for the pecuniary loss of a surviving spouse or dependent caused by the death of the decedent and to reimburse death creditor beneficiaries.... The purpose of the wrongful death statute is to provide for dependents, not to punish someone who causes a wrongful death. To allow damages which not go to a dependent who has suffered pecuniary loss from the death of a decedent would not serve the purpose of this statute, but would serve only to punish the [defendant].

*Thomas v. Eads,* 400 N.E.2d 778, 783 (Ind. Ct.App.1980); *Matter of Estate of Bruck,* 632 N.E.2d 745, 747 (Ind.Ct.App.1994). It seems that the two states have different policies for their wrongful death statutes: Arkansas law allows for the punishment of the defendants, while Indiana law is limited to compensation and reimbursement.

Many courts hesitate to choose which state law applies based on Leflar's "better law" factor. *See, e.g., Kenna,* 18 F.3d at 627. "Although the two states have reached different balances with respect to the compensa-

tion of victims and the protection of defen-. dants against excessive verdicts, we are not in a position to decide that either one is the better rule of law." *Id.* This Court agrees.[2] As in *Kenna* , this Court finds it unnecessary to make its determination based on Leflar's fifth factor. Based on the significant contracts with the State of Indiana, and the lack thereof with the State of Arkansas, Indiana has a great interest in this case. Therefore, the Court finds that Indiana's wrongful death statute applies to this case.

*Motion for Leave to Amend*

In the alternative, Plaintiffs request leave to amend their complaint so that they may assert their claims directly in this Court. If the Court allowed such an amendment, Indiana's choice–of–law rule would apply. Plaintiffs cite Federal Rule of Civil Procedure 15(a) to support their request. However, Plaintiffs offer no authority in which a transferee court allowed a plaintiff to amend his or her complaint to circumvent the transferor's court's choice–of–law rules.

■ Sea Quest argues that the motion to amend should be denied because even under Indiana's choice–of–law rules, Indiana's wrongful death statute would apply. Indiana has adopted "most significant contacts" approach as its choice-of-law rule. *Hubbard Mfg. Co., Inc. v. Greeson*, 515 N.E.2d 1071 (Ind.1987).

■ In *Hubbard*, Greeson brought a wrongful death action against Hubbard, an Indiana corporation, alleging defective manufacture of a lift truck. *Id.* at 1072. Greeson's husband, an Indiana resident, was killed while working in a Hubbard lift truck in Illinois. *Id.* The district court found that Indiana had more significant contacts than Illinois but felt constrained by the lex loci delicti rule. On appeal, the Indiana Supreme Court modified the traditional lex loci delicti rule:

Choice-of-law rules are fundamentally judge-made and designed to ensure the appropriate substantive law applies. In a large number of cases, the place of the tort will be significant and the place with the most contacts. [citation omitted.] In such cases, the traditional rule serves well. A court should be allowed to evaluate other factors when the place of the tort is an insignificant contact. In those instances where the place of the tort bears little connection to the legal action, this Court will permit the consideration of other factors such as:

1) the place where the conduct causing injury occurred;

2) the residence or place of business of the parties; and

3) the place where the relationship is centered. [citation omitted].

*Id.* at 1073–74. The court noted that the decedent worked in Illinois, that the coroner's inquest was held in Illinois, and that the decedent's family was receiving workmen's compensation benefits from Illinois, but held that these contacts with the place of the tort were insignificant. *Id.* at 1074. The court then applied the factors listed above and decided that Indiana had the more significant relationship and contacts with the litigation. The court specifically noted that "plaintiff's two theories of recovery relate to the manufacture of the lift in Indiana." *Id.* Thus, lex loci delicti is presumptively applied unless the place of the tort is an insignificant contact, in which case, the court may consider the other factors to determine which state's law to apply. *Estate of Bruck*, 632 N.E.2d 745, 747 (Ind.Ct.App.1994) (citing *Thomas v. Whiteford Nat'l Lease*, 580 N.E.2d 717, 718 (Ind.Ct.App.1991), and *Tompkins v. Isbell*, 543 N.E.2d 680, 681 (Ind. Ct.App.1989)). The factors are evaluated "according to their relative importance to the specific issues being litigated." *Cutshall v.*

---

2. Commentators have raised constitutional questions about the "better rule" or "better law" approach. *See* Larry Kramer, Same–Sex Marriage, Conflict of Law and the Unconstitutional Public Policy Exception, 106 Yale L.J. 1965, 1997 (1997) ("better law analysis[] ought to be found unconstitutional."); Douglas Laycock, Equal Citizens of Equal and Territorial States: The Constitutional Foundations of Choice of Law, 92 Co-

lum. L. Rev. 249, 336 (1992) ("Choice–of–law methods that prefer local litigants, local law, or better law are unconstitutional"); *See also* Terry S. Kogan, Toward a Jurisprudence of Choice of Law: *The Priority of Fairness Over Comity*, 62 N.Y.U.L. Rev. 651, 698 (1987)(arguing that better law approaches are unconstitutional because they violate a duty of neutrality toward sister– states' conceptions of "good").

*Ford Motor Co.,* 719 F.Supp. 782, 783 (S.D.Ind.1989); *Hubbard,* 515 N.E.2d at 1074.

Though Plaintiffs tried to persuade the Court otherwise, Arkansas has no other contact with this case other than being the site of the accident. *See Estate of Bruck,* 632 N.E.2d at 747–48 (finding that decedent had no other connection with the state in which the tort occurred, and therefore "the place of the tort must [] be considered an insignificant contact, and we are left to consider other factors under the *Hubbard* analysis"). As explained above, if Thornton died as a result of a regulator malfunction, the fact that his death occurred in Arkansas was mere chance. The fact that Arkansas has an interest in tourism does not provide a significant contact because it is irrelevant to the issues being litigated. Though the death occurred while also using other equipment and services secured in Arkansas, Plaintiffs' cause of action is based on products liability and is unconnected to any conduct in Arkansas. Moreover, in *Hubbard* the court specifically noted that the state where the coroner's inquest took place is insignificant. 515 N.E.2d at 1073. Thus, the Court must consider factors set forth in *Hubbard* to determine which state's wrongful death statute governs.

In *Cutshall,* the court held that under Indiana's choice-of-law provisions, a truck driver's negligence claim against an automobile manufacturer for injuries sustained in North Carolina when his cargo fell on him, as a result of alleged improper loading of cargo in Missouri, was governed by Missouri law. 719 F.Supp. at 785. In making this determination, the court applied the *Hubbard* factors. *Id.* at 784. First, the court found that the alleged negligent conduct forming the basis for the claim occurred at the Missouri assembly plant where employees allegedly improperly loaded and secured the cargo. *Id.* Second, regarding the residence or place of business of the parties, the court noted that the plaintiffs were Indiana residents, the defendant was a Delaware corporation doing business in Missouri, and none of the parties were related to North Carolina. *Id.* Finally, the court determined that the only direct contact between the parties occurred in Missouri when the plaintiff picked up the goods. The relationship was made through plaintiff's employer, an Indiana company. *Id.* The relationships only connection to North Carolina was that the goods were to be delivered there. *Id.* With this case in mind, the Court considers the three *Hubbard* factors.

(1) The place where conduct causing the injury occurred.

As mentioned in *Hubbard,* the theory of recovery alleged by the plaintiff is significant. 515 N.E.2d at 1074. In this case, the Plaintiffs' theories of recovery relate to the allegedly defective regulator. *Hubbard's* first factor has been rephrased as "the state in which the negligence occurred." *KPMG Peat Marwick v. Asher,* 689 N.E.2d 1283, 1287 (Ind.Ct.App.1997) (quoting *Castelli v. Steele,* 700 F.Supp. 449, 454 (S.D.Ind.1988)). In this case, the alleged negligence occurred where the regulator was manufactured or designed, that is, France. *See Big Rivers Elec. Corp. v. General Elec. Co.,* 820 F.Supp. 1123, 1125 (S.D.Ind.1992) (finding that in a defective product claim, the place where the conduct causing the injury occurred was either where the product was manufactured, installed, or serviced); *Cutshall,* 719 F.Supp. at 784.

(2) The residence or place of business of the parties.

The Court finds that Indiana has the most significant ties to the parties. The decedent was an Indiana resident. The Plaintiffs are Pennsylvania residents. Sea Quest is a California corporation which does business in Indiana as well as Arkansas, through authorized dealers. *Cf. Cutshall,* 719 F.Supp. at 785. Of any state, Indiana has the most ties to the parties.

(3) The place where the relationship is centered.

The relationship between the parties was centered in Indiana because Thornton purchased the regulator in Indiana. This was the only contact, albeit indirect, between Sea Quest and Thornton. The relationship between Sea Quest and Thornton was through The Dive Shop, a business located in Valpa-

raiso, Indiana. This relationship had no connection to Arkansas. *See Cutshall,* 719 F.Supp. at 785. *Cf. Big Rivers,* 820 F.Supp. at 1125 (finding that the parties' relationship was centered in the state where bids for equipment were taken and where equipment was delivered, installed, and serviced).

Evaluating these facts in light of the factors set forth above, the Court finds that Indiana has more significant contacts than Arkansas to the issues being litigated. Therefore, based on Indiana's choice-of-law rules, Indiana's wrongful death statute would apply to Plaintiffs' claim against Sea Quest. Because amending Plaintiffs' complaint to allow them to proceed directly in this Court would not affect the substantive law chosen, the Court **DENIES** Plaintiffs' motion as **MOOT**.

*CONCLUSION*

For the reasons set forth above, the Plaintiffs' Motion for the Determination or Choice of Arkansas Law or, in the Alternative, Motion for Leave to Amend is **DENIED**, and Defendant's Motion to Apply Indiana Law is **GRANTED**.