# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3892

_____

| | | |
|---|---|---|
| Larken, Inc., | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Dirk Wray, | * | District  Court for the |
| | * | Northern District of Iowa. |
| Defendant - Appellant. | * | |
| | * | |
| Al Yip, | * | |
| | * | |
| Defendant. | * | |

_____

Submitted:  February 10, 1999

Filed:  August 16, 1999

_____

Before McMILLIAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Following the dissolution of two limited partnerships of which Larken, Inc., Dirk Wray and Al Yip were members, Larken commenced this action in Iowa state court to recover the capital it initially contributed to the partnerships, pursuant to its contractual right to recover such capital prior to the general distribution of the partnerships' assets. Larken also sought its particular share of the general asset distribution.  Wray and Yip

removed the case to the district court[1] on diversity grounds. After a bench trial, Larken was awarded $2,036,876 against Wray and $311,174 against Yip. Wray and Yip appeal, arguing that Larken's pursuit of its priority capital distribution is barred by res judicata because of previous litigation in Minnesota. They also take issue with the particular sums awarded to Larken. We affirm the judgment of the district court.

Larken, Wray and Yip formed one limited partnership to acquire and operate a hotel in Minneapolis (a Hilton Hotel near the Minneapolis-St. Paul Airport), and another partnership to own a hotel in Iowa City (a Holiday Inn near the University of Iowa campus). Wray and Yip started as employees of Larken, but they became limited partners after raising the financing needed to purchase the two hotels.[2] Wray and Yip secured the financing from a group of investors to whom we refer as the "Pine Hill interests."[3] The Pine Hill interests provided a mortgage loan for the Minnesota hotel, negotiated for and later exercised an option to purchase a 50 percent interest in the Minnesota hotel partnership, loaned $8 million for the purchase of the Iowa hotel, and became a limited partner in both partnerships. Larken, for its part, contributed $1.2 million to the Minnesota partnership and $2.05 million to the Iowa partnership.

---

[1]The Honorable John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa. The parties consented to plenary magistrate jurisdiction.

[2]Under his employment agreement, Wray was to receive a 30 percent interest in any equity position that Larken would obtain for which Wray was the "producing cause" of the financing. Wray became a limited partner in the two hotel partnerships after he procured financing for the enterprises. Although Yip did not have an employment contract, he too was made a limited partner and given an interest in the hotels for helping to procure financing.

[3]The Pine Hill interests include Jeffrey Koo, a Taiwanese investor, Lenora Chen, his sister, Pine Hill Minnesota, Inc., Pine Hill Minnesota Investments, Inc., and Pine Oakrich Investment Company.

The two hotels proved to be profitable enterprises, but the partners' relationship nevertheless deteriorated. Both partnership agreements included a "deadlock" provision, under which the highest bidder could purchase the other partners' interests in the event of a deadlock between the partners in connection with a "major decision" requiring their unanimous approval. The Pine Hill interests brought suit in California to invoke the "deadlock" provision so that Pine Hill could try to buy out the other partners. Meanwhile, Wray, Yip and the Pine Hill interests sued Larken in Minnesota alleging various breaches of fiduciary duty. Larken initiated various counterclaims; among other things, it sought to rescind Wray and Yip's limited partnership interests, but the parties dispute the ground upon which Larken sought rescission. Wray and Yip argue that Larken wanted to rescind because Wray and Yip refused to acknowledge Larken's right to receive the capital it had invested prior to Wray and Yip receiving <u>any</u> proceeds, including proceeds from the sale of the hotels, while Larken maintains that its counterclaim concerned its right to a return of its capital before Wray and Yip could share in the hotels' ongoing cash flow. Still other litigation involved disputes between Larken and the other partners concerning the management contracts connected to the hotels. The various claims and counterclaims were consolidated and assigned to the Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Judge Magnuson granted partial summary judgment in Pine Hill's favor, holding that the "deadlock" provisions of the partnership agreements could be invoked and that Pine Hill could buy out the other partners. The court had earlier ordered the parties to submit sealed bids for each other's interests in the partnerships. Larken submitted the highest bid but was unable to obtain financing within 120 days, so Pine Hill's bid therefore prevailed. Just as a jury was about to hear evidence concerning the other matters still at issue, the parties reached an oral settlement. The settlement dismissed the breach of fiduciary duty claims against Larken, as well as Larken's counterclaims, in return for a payment of $600,000 to the Pine Hill interests and $100,000 to Wray and Yip, and the court directed the parties to reserve explicitly those items that were not to

be included in the settlement. Four items were so reserved: (i) Larken was permitted to appeal Judge Magnuson's determination that Pine Hill could invoke the "deadlock" provision,[4] (ii) Larken and Pine Hill's disputes about the management contracts were not to be affected by the settlement, but were to be resolved in state court in Iowa and Minnesota, (iii) Larken received the right to pay the $600,000 and $100,000 amounts out of its share of the proceeds from the impending sale of the two hotels, and (iv) Wray and Yip reserved their right to receive various payments under the employment and partnership agreements, and also to seek damages for Larken's allegedly faulty preparation of certain partnership tax forms.

The settlement itself was made orally on the record, and Judge Magnuson labeled it a "first cut." At the conclusion of the parties' comments, Judge Magnuson said that he "understood that the settlement today is a situation as though there had been a jury court final judgment entered on this case," and he declared the case settled. Although directed by the court to reduce the agreement to writing, the parties were unable to do so because they disagreed about the scope of the settlement.

That disagreement gave rise to the present lawsuit, which Larken brought in Iowa state court after the Pine Hill interests purchased the two hotels. Wray and Yip removed the case to the district court. Larken sought a declaratory judgment that it was entitled to receive the capital it contributed to the two partnerships before Wray and Yip should receive any share of the sales proceeds of the hotels. Under Wray's employment agreement, Wray was not entitled to a return of his equity interest until "after the return of Larken's hard cash investment and interest thereon at 10% per annum out of any sale or refinancing proceeds." Although Yip never signed an employment agreement, both the Minnesota and Iowa partnership agreements gave

---

[4]Larken indeed appealed, and this Court summarily affirmed. See Larken Minnesota, Inc. v. Wray, 89 F.3d 841 (Table), No.95-2219, 1996 WL 362672 (8th Cir. July 1, 1996).

Larken a right to a priority return of its capital.[5]  Larken also asked the court to declare the particular amounts of the sales proceeds that Larken, Wray, and Yip should receive. The district court rejected Wray and Yip's argument that res judicata barred Larken's claim of priority for its capital contribution (a result of the earlier lawsuit in Minnesota). Subsequently, the district court held in Larken's favor and entered judgment against Wray for $2,036,876 and against Yip for $311,174.  This appeal followed.

Wray and Yip do not appear to dispute that Larken was entitled to a priority return of its capital contribution to the two partnerships.[6]  Instead, they invoke res judicata and argue that the parties' earlier suit in Minnesota resolved the claim that Larken now presses.  Res judicata operates when (i) the court that previously adjudicated the claim had jurisdiction to do so, (ii) the previous litigation resulted in a final judgment on the merits, and (iii) the previous suit involved the same cause of action between the same parties, or was based on the same nucleus of operative facts.  See Lunde v. Helms, 29 F.3d 367, 371 (8th Cir. 1994), cert. denied, 513 U.S. 1155 (1995).  When the parties to a previous lawsuit agree to dismiss a claim with prejudice, such a dismissal constitutes a "final judgment on the merits" for purposes of res judicata.  See Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995) (voluntary dismissal with prejudice); Brooks v. Barbour Energy Corp., 804 F.2d 1144, 1146 (10th Cir. 1986); Clark v. Haas Group, Inc., 953 F.2d 1235, 1238 (10th Cir.), cert. denied, 506 U.S. 832 (1992); cf. In re Piper Aircraft Distribution Sys.

_____

[5]Under the Minnesota agreement, in the event of dissolution, each partner was entitled to a return of its "Capital Account" balance (which included each partner's initial capital contribution) before the payment of the remaining proceeds to each partner in accordance with its percentage interest.  The Iowa partnership agreement contained a similar payout scheme.

[6]Wray contended before the district court that one of Larken's principals, Larry Cahill, orally agreed to waive Larken's entitlement to repayment of capital in return for splitting a certain transaction fee in Larken's favor.  The district court rejected Wray's contention, and this factual finding is not challenged on appeal.

Antitrust Litig., 551 F.2d 213, 219 (8th Cir. 1977) (res judicata and collateral estoppel generally inapplicable to voluntary dismissal without prejudice). Nevertheless, the question of whether the parties actually agreed to dismiss a particular claim depends upon the proper interpretation of their settlement agreement--a legal inquiry governed by the parties' intent at the time of settlement. See Keith v. Aldridge, 900 F.2d 736, 740 (4th Cir.) (preclusive effect of consent judgment[7] depends upon intent of parties), cert. denied, 498 U.S. 900 (1990).

In this diversity case, the parties' settlement agreement must be construed according to state law. See Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir. 1999). A federal court must apply the choice of law rules of the forum state--in this case, Iowa. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Iowa law, in turn, employs the Second Restatement's "most significant relationship" test to determine which state's law will govern a contract's interpretation. See Cole v. State Auto. & Cas. Underwriters, 296 N.W.2d 779, 781-82 (Iowa 1980). Although the parties do not brief the question, we are persuaded that Minnesota law should determine the meaning of the parties' settlement agreement. See Restatement (Second) of Conflict of Laws, § 188(2) (absent choice by parties, court should consider place of contracting, of negotiation, of performance, of contract's subject matter, and parties' domiciles, residences, nationalities, places of incorporation, and places of business). Finally, Minnesota law requires courts to give effect to the language used in a contract. See Barry, 172 F.2d at 1013. If that language is ambiguous, however, a court will consider extrinsic evidence. See Barry v. Barry, 78 F.3d 375, 382 (8th Cir. 1996).

---

[7]Although one of the claims at issue in the Minnesota litigation (whether Pine Hill could invoke the "deadlock" provision) was resolved by a declaratory judgment rather than by a settlement, we evaluate the dismissal of the rest of the claims as a "consent judgment."

We have carefully reviewed the record and cannot conclude that the parties intended to foreclose the claim of Larken's entitlement to a priority return of its capital from the proceeds generated by the sale of the two hotels. The settlement agreement itself does not specify whether the agreement precludes the claim that Larken brought in Iowa.[8] We therefore turn to the circumstances surrounding the settlement in order to ascertain the parties' intent.

As circumstantial evidence that the Minnesota agreement settled the question of Larken's right to a priority return of its capital contribution, Wray and Yip direct our attention to Larken's counterclaim for equitable rescission of the partnership agreements with Wray and Yip. The counterclaim contended that Larken was entitled to a return of its capital before "any monies" were received by Wray and Yip, and the counterclaim was among the matters settled in Minnesota. Because the matter of Larken's priority capital distribution was before the court in Minnesota and because the Minnesota settlement resolved all matters except those that were explicitly carved out, the argument goes, the settlement resolved the claim pressed by the present lawsuit.

We believe that the language of Larken's counterclaim cannot bear the weight that Wray and Yip place upon it. We are persuaded by Larken's argument that its counterclaim sought a return of capital prior to Wray and Yip's receiving any funds

---

[8]Wray and Yip place great emphasis on Judge Magnuson's statement that "the settlement today is a situation as though there had been a jury court final judgment entered on this case." This statement, however, does not specify the particular claims that were so resolved, nor which claims could have been. Wray and Yip further argue that Judge Magnuson directed the parties specifically to reserve any matters that were not to be resolved by the settlement and that the matter of how to divide the hotels' sales proceeds was not so reserved. This argument also begs the question of precisely what was before the district court to begin with. We see no indication that the parties meant to obligate themselves to "reserve" claims or issues that were not before the court in the first place.

from the hotels' ongoing cash flow rather than the sales proceeds. The counterclaim's language does not compel Wray and Yip's reading of it, and the context surrounding the Minnesota litigation lends credence to Larken's interpretation. As part of the settlement, Larken reserved its right to appeal Judge Magnuson's ruling that Pine Hill could invoke the "deadlock" provision, which provision in turn triggered a sale of the hotels. It is unlikely, though by no means inconceivable, that the parties would resolve how to distribute sales proceeds without resolving whether a sale would occur in the first place. We therefore conclude that the division of the hotels' sales proceeds was not before the Minnesota district court and therefore was not resolved by the parties' settlement.[9]

We are also unpersuaded by Wray and Yip's attacks on the damages awarded to Larken. We review the amount of damages awarded by the district court with considerable deference in court-tried cases. When an argument is made that the award is excessive, we have pointed to the critical role of the trial judge, and we have stated that we will review the amount of damages "only in those rare situations where we are pressed to conclude that there is 'plain injustice' or a 'monstrous' or 'shocking' result." Overton v. United States, 619 F.2d 1299, 1304 (8th Cir. 1980) (quotation omitted); Hysell v. Iowa Public Serv. Co., 534 F.2d 775, 786 n.8 (8th Cir. 1976). Appellants have articulated their argument, however, as the trial court's uncritical acceptance of

---

[9]Wray and Yip argue that res judicata bars not only those claims that were adjudicated in a previous lawsuit, but also those that could have been. See Baptiste v. Comm'r of Internal Revenue, 29 F.3d 433, 435-36 (8th Cir. 1994), cert. denied, 513 U.S. 1190 (1995). Even assuming that Larken could have asserted its claim for a priority distribution of hotel sales proceeds during the Minnesota litigation, there is no indication that the parties intended to settle any claims other than those that were brought to the court. "If it is clear that the parties agreed to settle claims that were not reflected in the original pleadings, preclusion may extend to claims that were not even formally presented." 18 Charles Alan Wright et al., Federal Practice and Procedure § 4443, at 386-87 (1981) (emphasis added).

a damages exhibit prepared by Larken's accountant, which, appellants argue, contained a number of fundamental errors that resulted in a damages award that substantially overcompensates Larken. The argument is expanded by stating that the district court's judgment is flawed because the damages calculations are infected with faulty logic and several legal errors.

Wray and Yip argue that the damages award "double dips" by forcing them twice to pay certain debts owed to Larken. Specifically, Larken loaned Wray and Yip $614,996 and $48,235, respectively, by "ascribing" to them a portion of Larken's capital contribution to the Iowa hotel partnership. In turn, $1.5 million of Larken's capital contribution came in the form of a loan from a third party, Great Pacific Finance Corporation. After the Iowa hotel was sold but before the partnerships assets were distributed, Larken repaid its $1.5 million debt to Great Pacific out of partnership assets--of which Wray and Yip have 30 percent and 2.35 percent interests, respectively. Later, we are told, the court required Wray and Yip to repay $842,665 and $66,067 to Larken, representing principal and interest on the amount "ascribed" to Wray and Yip, but the court did not award Wray and Yip any credit for their shares of the partnership assets that were used to extinguish Larken's debt to Great Pacific. Wray and Yip therefore contend that the damages award overcompensates Larken by about $485,000. Yet, the testimony of Larken's accountant, who prepared the damages analysis that the district court accepted, suggests that the final sum owing to Larken[10] was already reduced to account for the fact that the payment to Great Pacific was made out of partnership assets. The accountant's testimony and the damages analysis are not themselves models of clarity and are perhaps susceptible to Wray and Yip's contrary reading of them. Whether there is double dipping in essence comes down to a factual

---

[10]That is, Larken's share of the partnerships' cash flow, plus its share of the sales proceeds, plus the return of its capital with interest, plus repayment of the debts owed by Wray and Yip, minus certain amounts already received by Larken from the partnerships--including the Iowa partnership's payment of $1.5 million to Great Pacific.

question. The district court made a factual finding by rejecting Wray and Yip's argument, and we cannot conclude that its finding was clearly erroneous. If indeed the argument is the more general one that plaintiff is substantially overcompensated, then this is another way of saying that the award is excessive, and we must view the award under the "plain injustice, monstrous, or shocking" standard. We cannot conclude that application of this standard to the facts before us justifies reversal.

Finally, Wray and Yip attack the damages award on various other grounds, alleging that the district court erroneously awarded interest upon Larken's capital contribution to the Minnesota partnership, that interest should not have awarded on those portions of Larken's capital contribution to the Iowa partnership that it "ascribed" to Wray and Yip, and that the court wrongly refused to credit Wray and Yip for various management fees that Larken owed them. Having reviewed the record, we conclude that Wray and Yip did not make these arguments below with sufficient particularity to preserve them. We therefore decline to address these arguments, which are of little merit. See Hillary v. Trans World Airlines, Inc., 123 F.3d 1041, 1044-45 (8th Cir. 1997) (argument not made to trial court may not be raised for first time on appeal), cert. denied, ___ U.S. ___, 118 S. Ct. 881 (1998).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-