Allye M. HARRIS, Individually, and as Guardian of the Person and Estate of Willie B. Harris, Jr., an Incapacitated Person, Plaintiff,

v.

CITY OF MEMPHIS, TENNESSEE, Defendant.

No. 3:99CV00425 SMR.

United States District Court,
E.D. Arkansas,
Jonesboro Division.

Sept. 29, 2000.

George H. Niblock, Niblock Law Firm, Fayetteville, AR, for plaintiff.

Ronald G. Wyatt, Charmiane G. Claxton, Memphis, TN, for defendant.

## ORDER

REASONER, District Judge.

Presently before the Court is Defendant's Motion to Dismiss First Amended and Substituted Complaint (Docket No. 13). Plaintiff has responded (Docket No. 15), and Defendant has replied (Docket No. 17). For the following reasons, the motion is granted and the case is dismissed. Any remaining motions in this case are moot.

### I. Facts

The present action is a Arkansas common law negligence claim brought by Allye M. Harris ("Ms.Harris"), an Arkansas resident, against the City of Memphis for the alleged negligent maintenance of the Interstate 55 Tennessee/Arkansas Bridge ("Bridge") over the Mississippi River, between Memphis, Tennessee, and West Memphis, Arkansas. Ms. Harris' husband, Willie B. Harris, Jr. ("Mr.Harris"), was injured in an automobile accident allegedly caused by the lack of light on the Bridge.

On June 4, 1996, at approximately 11:30 p.m., Mr. Harris was driving his automobile in the northbound lane of Interstate 55 and was crossing the Bridge, leaving Tennessee and entering Arkansas. A 1994 Kenworth Tractor Trailer had stalled on the Bridge in the northbound, inside lane and Mr. Harris struck the tractor trailer, injuring Mr. Harris and causing damage to his vehicle. Ms. Harris brought the present as the guardian of Mr. Harris.

Plaintiff alleges that the City of Memphis had a duty to maintain the roadway lighting on the Bridge, a duty Plaintiff alleges is evidence by a 1972 contractual maintenance agreement ("1972 Agreement") between the State of Arkansas and the State of Tennessee. Ms. Harris alleges that during a considerable time prior to June 4, 1996, a portion of the lights on the Bridge were not operating. Plaintiff further alleges that the City of Memphis had knowledge of the inoperable lights but failed to maintain them. Plaintiff further alleges that on June 4, 1996, at the time of the automobile accident involving her husband, there were no working lights on the entire length of the Bridge. Plaintiff claims that the alleged failure to maintain the lights on the Bridge was the proximate cause of the accident because it affected her husband's vision and perception.

The City of Memphis has filed the present motion, asserting that this action should be dismissed. The Court agrees.

### II. Appropriate Standards Governing a 12(b)(6) Motion to Dismiss

A proper basis for a motion to dismiss is "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A complaint must be dismissed under Rule 12(b)(6) only if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Additionally, in ruling on a motion to dismiss, a court must read the facts alleged in the complaint "generously" drawing all reasonable inferences in favor of the party opposing the motion. *See Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir.1994); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). "The trial court's role is to appraise the legal merits of the complaint and not to weigh the evidence which might be introduced at trial. The issue 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Saunderson v. Gary Goldberg & Co.*, 899 F.Supp. 177, 179 (S.D.N.Y.1995) (citations omitted). Finally, a court should only grant a motion to dismiss "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citation omitted).

### III. Discussion

Plaintiff asserts that her action is a common law negligence action brought under

the laws of the State of Arkansas. Defendant asserts five defenses, two of which arise under the Tennessee Governmental Tort Liability Act (hereinafter "TGTLA"). *See* Tenn.Code.Ann. § 29–20–101 et seq. (1998). Because the Court finds Defendant is immune under the TGTLA, it does not reach Defendant's remaining arguments.[1]

First, Defendant argues that, even assuming that Defendant is not immune under the TGTLA, this cause of action is barred by the twelve (12) month statute of limitations provided in the TGTLA. *See* Tenn.Code Ann. § 29–20–305(b) (1998). Plaintiffs argue that the Arkansas three year statute of limitations should govern because this negligence action is brought under Arkansas common law. *See* Ark. Code Ann. § 16–56–105 (1998). Second, Defendant asserts that the immunity granted under TGTLA bars the present action. Thus, the issue is whether Arkansas law or Tennessee law determines the applicable statute of limitations and immunity status for Defendant. The issue is resolved by principles of choice of law and comity.

### A. *Choice of Law*

▮ In resolving a choice of law issue, Arkansas formerly applied the rule of lex loci delicti and applied the substantive law of the state where the accident occurred. *See Bell Trans. Co. v. Morehead,* 246 Ark. 170, 437 S.W.2d 234 (1969); *McGinty v. Ballentine Produce, Inc.,* 241 Ark. 533, 408 S.W.2d 891 (1966). However, in *Wallis v. Mrs. Smith's Pie Co.,* 261 Ark. 622, 550 S.W.2d 453 (1977) (en banc), the Arkansas Supreme Court adopted a five-factor approach, noting that "the traditional rule of lex loci delicti has fallen under much criticism in recent times." *See Wallis,* 261 Ark. at 627, 550 S.W.2d at 456. Under the new approach, which is an adoption of Dr. Robert A. Leflar's "choice influencing considerations," Arkansas courts look to the following five factors to determine which state's law to apply:

(1) predictability of results;

(2) maintenance of interstate and international order;

(3) simplification of judicial task;

(4) advancement of the forum's governmental interests; and

(5) application of the better rule of law.

*See Schlemmer v. Fireman's Fund Ins. Co.,* 292 Ark. 344, 346, 730 S.W.2d 217, 219 (1987) (citing *Wallis v. Mrs. Smith's Pie Co.,* 261 Ark. 622, 550 S.W.2d 453 (1977) (en banc); *Williams v. Carr,* 263 Ark. 326, 565 S.W.2d 400 (1978)); *see also Whirlpool Corp. v. Ritter,* 929 F.2d 1318, 1321 (8th Cir.1991) (recognizing that, in *Wallis,* the

---

1. Defendant's third and fourth arguments are based upon the prior litigation brought by Plaintiff. Defendant argues that the present action is barred because Plaintiff failed to join Defendant in a previous federal civil suit. In *Harris v. Gray,* 2:96CV00129 (E.D.Ark.) (filed October 2, 1996), United States District Judge George Howard, Jr., entered an Order on July 17, 1997, which dismissed the case with prejudice pursuant to a compromise between the plaintiff, Allye M. Harris, and the defendants, Christopher Gray and Hirschbach Motor Lines, Inc. The defendants in the former action filed a third-party complaint against Memphis Light, Gas and Water ("MLGW") on February 13, 1997, which was voluntarily dismissed on July 14, 1997, pursuant to Rule 41(c) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 41(c). Plaintiff asserts that she may bring this second action because she is not required to sue joint tortfeasors in the same action.

Defendant asserts for its fourth argument that the case should be dismissed pursuant to Rule 19 of the Federal Rules of Civil Procedure because other indispensable and necessary parties to this action cannot now be joined having been dismissed with prejudice in the previous lawsuit. *See* Fed.R.Civ.P. 19. Plaintiff argues that the release of one joint tortfeasor does not preclude Plaintiff from seeking damages against a second joint tortfeasor. Finally, Defendant argues that proper venue does not lie in the Eastern District of Arkansas, and the Court should dismiss the case pursuant to 28 U.S.C. § 1406 because it would not be in the interest of justice to transfer this case. Plaintiffs argue that proper venue does lie in the Eastern District of Arkansas because the alleged act of negligence occurred in Arkansas.

Arkansas Supreme Court replaced the traditional choice of law rules in tort actions with Dr. Leflar's approach). "In other words, the Arkansas Court, as the forum court, is free to apply the substantive law of a sister state where it finds that such state has a significant interest in the outcome of the issues involved." *Williams,* 263 Ark. at 333, 565 S.W.2d at 404.

In previous cases, the Arkansas Supreme Court has approved the use of a sister state's law even when the accident occurred in Arkansas. *See Schlemmer,* 292 Ark. at 348, 730 S.W.2d at 219 (approving the application of Tennessee substantive law when an automobile accident occurred in Arkansas); *Williams,* 263 Ark. at 333, 565 S.W.2d at 404 (same). Thus, if the accident in the present case occurred in Arkansas as Plaintiff alleges, the possibility of applying Tennessee law is not foreclosed.

Although all five factors should be considered, their relative importance varies depending upon the area of law involved. *See Kenna v. So–Fro Fabrics, Inc.,* 18 F.3d 623, 626 (8th Cir.1994). The first factor, the predictability of results, is unimportant in a tort action and does not apply. *See Schlemmer,* 292 Ark. at 346–47, 730 S.W.2d at 219 ("As with other accident cases, the predictability consideration has no bearing on the unplanned injury."). The second factor is the maintenance of interstate and international order. The harmonious relations between Arkansas and Tennessee would be advanced by applying Tennessee law that grants immunity to a Tennessee municipality. The third factor, simplification of the judicial task, does not indicate which law the Court should apply. The Court is capable of determining, interpreting, and applying the law from either state, thus neither state law is favored.

The fourth factor, advancement of the forum's governmental interest, is often considered the most significant in tort actions. Arkansas has an interest in protect-

ing its residents who are victims of torts. *See Kenna,* 18 F.3d at 627. Yet, Tennessee also has an interest in protecting its municipalities through its sovereign immunity, which is codified in the TGTLA. Finally, for the fifth factor, the Court must decide the better rule of law, basing its decision on which law makes "good socioeconomic sense for the time when the court speaks." *See Nesladek,* 46 F.3d at 740. "It must not be automatically assumed that every court will regard its own law as better than that of other states. Courts sometimes realize that certain of their own laws, especially statutory ones, are archaic, anachronistic, out of keeping with the times." *Schlemmer,* 292 Ark. at 347, 730 S.W.2d at 219. Some courts hesitate to choose which state law applies based this fifth factor. *See Kenna,* 18 F.3d at 627 ("Although the two states have reached different balances with respect to the compensation of victims and the protection of defendants against excessive verdicts, we are not in a position to decide that either one is the better rule of law."). This Court also finds that it is not in the position to decide which is the better rule of law.

■ Thus, after considering the five factors, the Court finds that the second factor most persuasive. The remaining four factors did not favor the application of either Arkansas or Tennessee law. However, the second factor, maintenance of interstate and international order, indicates that this Court should apply Tennessee law rather than Arkansas law to determine the substantive rights of the parties. Certainly, the harmonious relationship between the two states[2] would not be enhanced if this Court were to ignore the immunity granted under Tennessee law simply because the accident occurred a few yards on this side of the state line. Therefore, Tennessee has a more significant interest in this case than does Arkansas. Because this Court is free to apply the

---

2. An illustrative example of the harmonious relationship between Arkansas and Tennessee is the 1972 Agreement attached to Plaintiff's Complaint.

substantive law of a sister state where it finds that such state has a significant interest in the outcome of the issues involved, *Williams*, 263 Ark. at 333, 565 S.W.2d at 404, the Court finds that Tennessee law should apply.

### B. *Comity*

Moreover, the principles of comity offer another, and perhaps better, reason to look to the law of Tennessee in this case. The parties direct the Court's attention to *Lee v. Miller County*, 800 F.2d 1372 (5th Cir.1986). In *Lee*, Texas residents brought a diversity action against Miller County, an Arkansas county, in the Eastern District of Texas. *See Lee*, 800 F.2d at 1373. The plaintiff sought to recover for injuries they sustained when they were injured while flying in a helicopter owned by Miller County. *See id.* The district court held that the Arkansas county was immune from suit, and the United States Court of Appeals for the Fifth Circuit affirmed, holding Miller County was immune as a matter of comity. *See id.* at 1378. "Comity is a principle under which the courts of one state give effect to the laws of another state or extend immunity to a sister sovereign not as a rule of law, but rather out of deference or respect. Courts extend immunity as a matter of comity to foster cooperation, promote harmony, and build goodwill." *Id.* at 1375. "Unless extending immunity to another state or its subdivision would violate Texas public policy, a Texas court would also give effect to the law of that state." *See id.* "Both states have a policy in favor of some form of immunity in a situation such as this. We do not believe that the fortuity of an Arkansas county being involved in a helicopter crash in Texas is an appropriate occasion to circumscribe the clear intent of lawmakers in both Texas and Arkansas." *Id.* at 1379.

In *Lee*, the Fifth Circuit attributes significant weight to *Nevada v. Hall*, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979). In *Hall*, California residents sued the State of Nevada in California state court for injuries as a result of an automobile accident on a California highway with a Nevada state employee. *See Hall*, 440 U.S. at 411, 99 S.Ct. 1182. Nevada asserted its immunity found under Nevada law. *See id.* California had waived its immunity for similar suits against it and the court found that it would be unfair to allow Nevada to claim immunity when California could not. *See id.* The Supreme Court upheld the California decision, holding that nothing in the Constitution *requires* California to comply with Nevada's request. *See id.* However, while holding that states do not have to recognize the law of other states, the Court indicated that states *may* do so as a matter of comity. *See id.* "It may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability. They are free to do so." *See id.* at 426, 99 S.Ct. 1182.

Similarly, in *Davis v. City of Augusta*, 942 F.Supp. 577 (S.D.Ga.1996), a Georgia federal court recognized the immunity of a Georgia city even though the court was bound to apply South Carolina's negligence law under Georgia's choice of law rule. In *Davis*, a garbage truck driver for the City of Augusta collided with a South Carolina driver while hauling trash in South Carolina. *See Davis*, 942 F.Supp. at 578. The South Carolina driver brought a diversity action for negligence in Georgia federal court. *See id.* The Georgia court found that the sovereign immunity enjoyed by the City of Augusta under Georgia law would be extended to the City of Augusta under South Carolina law. *See id.* at 580. Thus, the Georgia court, sitting in diversity and applying South Carolina law, extended sovereign immunity to the City of Augusta. *See id.*

■ In the present case, the facts seem similar to the *Lee* case. If the action had been brought in a Tennessee federal court and the law of Tennessee required the application of Arkansas negligence law, *Davis* would be much more similar. Nonetheless, the analysis presented in

both *Lee* and *Davis* persuade this Court that it should extend Defendant the immunity found under Tennessee law. Comity is not a matter of right, and being voluntary and not obligatory, the application rests in the sound discretion of the tribunal of the forum. *See Lee*, 800 F.2d at 1376 n. 13. "We emphasize that comity is a courtesy and not a right." *Brown v. Wood*, 257 Ark. 252, 258, 516 S.W.2d 98, 101 (1974).

■ In the present case, both Arkansas and Tennessee have similar statutes that grant municipalities immunity from suit. *Compare* Tenn.Code.Ann. § 29–20–201 (1998), *with* Ark.Code.Ann. § 21–9–301 (1998). The TGTLA and the comparable Arkansas statute are statutes that proscribe the tort immunity for the respective political subdivisions of the two states. Under both statutes, political subdivisions are immune from tort liability except to the extent allowed by statute. *See Davis v. Fulton County*, 884 F.Supp. 1245 (E.D.Ark.1995) (Arkansas); *Doe v. Coffee County Bd. of Educ.*, 852 S.W.2d 899 (Tenn.Ct.App.1992) (Tennessee). For this reason, extending immunity to the City of Memphis would not violate the public policy of Arkansas. Therefore, this Court will give effect to the law of Tennessee regarding the immunity of its municipalities. *See, e.g., Lee*, 800 F.2d at 1375 (stating that a Texas federal court would recognize immunity of an Arkansas county as provided under Arkansas law).

For these reasons, the TGTLA applies. Thus, Defendant is immune in the present action, unless the immunity is removed by Tenn.Code Ann. § 29–20–203 (1998), a statue which removes immunity under the TGTLA for injury from unsafe streets and highways. Defendant argues that § 29–20–203(a) does not apply to remove its immunity because it does not both "own and control" the Bridge. *See* Tenn.Code Ann. § 29–20–203(a) (1998) ("Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, *owned*

*and controlled* by such governmental entity.") (emphasis added).

Plaintiff admits that Defendant "does not technically own the bridge." However, Plaintiff urges the Court to find a type of constructive ownership, alleging Defendant "has all the responsibilities and duties of ownership." Plaintiff's argument is based solely upon an exhibit attached to her Complaint, which purports to be a 1972 contractual maintenance agreement between the State of Arkansas (specifically the State Highway Commission of Arkansas) the and the State of Tennessee (specifically the Tennessee Department of Transportation) as to the maintenance of the Bridge.

The 1972 Agreement provides:

1. Said Department agrees to maintain at its expense that portion of said bridge which is located within the State of Tennessee and said Commission agrees to maintain that portion of said bridge located in the State of Arkansas. The maintenance referred to in the preceding sentence is ordinary day to day maintenance and does not include major repairs.

2. It is agreed that said Commission will make inspections of this bridge in accordance with the National Bridge Inspection Standards with the cost to be borne by the Commission. However, in the event that the inspection reveals that it is necessary to hire consultants for special investigations, the cost will be paid by the Department and the Commission on a $^{50}\!/_{50}$ basis.

3. In the event that it becomes necessary to make major repairs on the said bridge or to paint same the cost of such major repairs and painting shall be borne by the said Department and the said Commission on a $^{50}\!/_{50}$ basis.

4. It is agreed that said Department and said Commission will each bear

50 percent of the expense of operating and maintaining the roadway and navigation lighting.

Moreover, an appendage ("Appendage") dated February 13, 1975, is attached to the 1972 Agreement. The Appendage purports to be a service contract whereby the Public Works Division of the City of Memphis would provide the maintenance for the roadway and sign lighting on the entire Bridge, and charge the states of Arkansas and Tennessee equally, as provided in the 1972 Agreement.

■ Such an agreement might be evidence of joint ownership and control of the Bridge by the States of Arkansas and Tennessee. However, it does not show that the City of Memphis both "owned and controlled" the Bridge, which is necessary to remove the immunity enjoyed by the City of Memphis under Tennessee law. For these reasons, this action is barred by the immunity bestowed upon the City of Memphis under Tenn.Code.Ann. § 29–20–201(a).

■ However, even assuming that Defendant's immunity is properly removed under § 29–20–203, Plaintiff's claim is still barred. The issue presented is whether the one (1) year statute of limitations provided in the TGTLA is applicable, or whether the Arkansas three (3) year statute of limitations for common law negligence actions is applicable. *Compare* Tenn.Code Ann. § 29–20–305(b) (1998), *with* Ark.Code Ann. § 16–56–105 (1998). The doctrine of comity again persuades the Court that the applicable law is that found within the TGTLA.

Under Arkansas law, "[w]hen a statute which creates a new type of right specifies that the existence of its new creation shall continue only for a limited length of time, there is no existence of right beyond what the statute has created." *See Wheeler v. Southwestern Greyhound Lines*, 207 Ark. 601, 604, 182 S.W.2d 214, 215 (1944). "[O]bviously no other state, even though its statutes would allow a longer period for such suits, can entertain an action on a right which has ceased to exist." *See id.*

"The general rule is that where a cause of action does not exist at common law, but is created by the statutes of a state, it only exists in the manner and form and for the length of time prescribed by the statutes of the state which created it." *Earnest v. St. Louis, M. & S.E.R. Co.*, 87 Ark. 65, 67, 112 S.W. 141, 143 (1908).

An analogous example to the present case is when a suit is brought in an Arkansas court under another state's wrongful death statute. *See, e.g., Wheeler v. Southwestern Greyhound Lines*, 207 Ark. 601, 604, 182 S.W.2d 214, 215 (1944); *see also Crowder v. Gordons Transports, Inc.*, 387 F.2d 413, 415 (8th Cir.1967) ("We are satisfied that the trial court reached a permissible conclusion upon the basis of Arkansas and Missouri law set forth in its opinion when it held that the substantive Missouri law controls this wrongful death action and that an action must be commenced in the manner set forth in the Missouri statute and within the time therein prescribed."). In *Wheeler*, the plaintiff brought an action in Arkansas state court under the Missouri wrongful death statute. *See Wheeler*, 207 Ark. at 602, 182 S.W.2d at 214. The Arkansas Supreme Court held that the statute of limitations provided in the Missouri statute applied. *See id.* at 605, 182 S.W.2d at 215–16.

While the TGTLA does not necessarily create the right of action, it does provide when immunity does not bar the action, thus defining when the action may be maintained. At common law in Tennessee, municipalities were completely immune from suit under the common law doctrine of sovereign immunity. *See Coffman v. City of Pulaski*, 220 Tenn. 642, 422 S.W.2d 429, 434 (1967) ("In sum, upon a consideration of the whole panorama of legal precedent in Tennessee and elsewhere, and the policy basis for the immunity rule so often and so well stated as not to require repetition here, and the evidence of legislative awareness, and our streets requiring unembarrassed police activity, we are not inclined to overrule cases establishing im-

munity ....."); *see also Lockhart v. Jackson–Madison County General Hosp.,* 793 S.W.2d 943, 945 (Tenn.App.1990) (stating that the TGTLA "is in derogation of the common law and therefore must be strictly construed"); *Austin v. County of Shelby,* 640 S.W.2d 852, 854 (Tenn.App.1982) (noting that the doctrine of sovereign immunity "has been part of the common or case law of this state for a considerable period of time," and that the TGTLA is "clearly in contravention of that common law"). The City of Memphis should not be subject to the possibility of suit for a longer period in Arkansas than it would be in its home state of Tennessee. Just as this Court extends to Defendant the benefit of the immunity defined by the TGTLA, the benefit of the TGTLA statute of limitations must also be extended to Defendant.

## IV. *Conclusion*

For the foregoing reasons, Defendant's Motion to Dismiss is granted. Judgment will be entered accordingly.