# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 00-1720

_____

Ronald Hughes, individually and as
next friend and co-tutor of Bridgette
Hughes, a minor child; Betty
Hughes, individually and as next
friend and co-tutor of Bridgette
Hughes, a minor child,

          Appellants,

    v.

Wal-Mart Stores, Inc.,

          Appellee.

Appeal from the United States
District Court for the
Eastern District of Arkansas.

_____

Submitted: January 8, 2001
Filed: May 15, 2001

_____

Before HANSEN and HEANEY, Circuit Judges, and WEBBER,[1] District Judge.

_____

HANSEN, Circuit Judge.

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

Plaintiffs Ronald and Betty Hughes brought this products liability suit against Wal-Mart for damages allegedly suffered by their daughter, Bridgette. Plaintiffs allege in their complaint that Bridgette was injured by a portable gasoline container distributed by Wal-Mart. The district court[2] granted summary judgment in favor of Wal-Mart, and plaintiffs appeal. They argue the district court erred in its choice of law analysis in granting summary judgment on their claims. We affirm.

I.

Ronald Hughes purchased at a Wal-Mart store in Monroe, Louisiana, a gasoline container manufactured by Rubbermaid, which he was using in December 1993 to burn tree stumps in his front yard. According to allegations in the complaint, Mr. Hughes was pouring diesel fuel from the container onto the stumps when the fuel contained within the container suddenly ignited and exploded. Fuel and flames spewed some forty feet to where six-year-old Bridgette was playing, resulting in severe injuries to the little girl. The accident occurred in Louisiana and plaintiffs, as well as Bridgette, were residents of Louisiana at the time of the accident.

Plaintiffs initially filed suit in federal district court in Louisiana but voluntarily dismissed their claims there and brought suit in the United States District Court for the Eastern District of Arkansas, the state where Wal-Mart maintains its principal place of business. They seek to recover for Bridgette's injuries under various theories but allege in particular that the container was defective because it was not equipped with an inexpensive safety device that would have either prevented ignition of the fuel or would have vented the container's pressure upon ignition of the fuel therein. Wal-Mart filed a motion for summary judgment in the district court, contending that Louisiana products liability law governed the action. Wal-Mart argued that under Louisiana law a

_____

[1]The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

distributor (as opposed to the manufacturer of the product) is not liable unless it knew or should have known the product was defective yet failed to warn of the defect. See Slaid v. Evergreen Indem., Ltd., 745 So. 2d 793, 797 (La. Ct. App. 1999).

Plaintiffs opposed the motion on the ground that Arkansas law governed their products liability claims. Unlike Louisiana law, an injured party is not foreclosed under Arkansas law from recovering from the distributor of a defective product. See Ark. Code Ann. § 4-86-102. Thus, the answer to the choice of law question facing the district court governed the vitality of plaintiffs' claims against Wal-Mart. Applying Arkansas choice of law principles, see Larken, Inc. v. Wray, 189 F.3d 729, 732 (8th Cir. 1999) ("A federal court must apply the choice of law rules of the forum state . . . ."), the district court concluded that Louisiana law governed the action and precluded recovery, and granted summary judgment in Wal-Mart's favor.

II.

The parties agree that Arkansas courts utilize Professor Robert A. Leflar's five choice-influencing factors as their choice of law rule in tort cases. The Arkansas Supreme Court abandoned the rule of lex loci delicti in Wallis v. Mrs. Smith's Pie Co., 550 S.W.2d 453 (Ark. 1977), deciding instead that the following five factors identified by Professor Leflar determine which state's law applies to an action: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. Id. at 456. The Arkansas Supreme Court has said that, after undertaking the Leflar analysis, an Arkansas court is "free to apply the substantive law of a sister state where it finds that such state has a significant interest in the outcome of the issues involved." Williams v. Carr, 565 S.W.2d 400, 404 (Ark. 1978).

We review de novo the district court's application of the five factors and its choice of law determination. Heating & Air Specialists, Inc. v. Jones, 180 F.3d 923, 928 (8th Cir. 1999). We begin our analysis with the second factor, the maintenance of interstate order, because the first and third factors have no relevance in ascertaining whether Arkansas or Louisiana law should apply to this action. The predictability of results is not implicated when an action arises out of an accident, see Nesladek v. Ford Motor Co., 46 F.3d 734, 738 (8th Cir.), cert. denied, 516 U.S. 814 (1995); Schlemmer v. Fireman's Fund Ins. Co., 730 S.W.2d 217, 219 (Ark. 1987), and the judicial task is not simplified by application of either state's law. A federal district court is faced almost daily with the task of applying some state's law other than that of the forum state, and it is equally capable of resolving the dispute under Louisiana or Arkansas law.

Plaintiffs ignore the second factor, the maintenance of interstate order, but Wal-Mart contends the factor bears in favor of applying Louisiana law to this case. Although the district court did not discuss whether maintenance of interstate order was implicated and a review of the Arkansas cases nets little insight into the importance of the factor, we agree that it is relevant in determining what law should be applied here. See, e.g., Harris v. City of Memphis, 119 F. Supp. 2d 893, 896 (E.D. Ark. 2000) (finding that the factor counseled application of Tennessee law rather than Arkansas law); Schlemmer, 730 S.W.2d at 219 (discussing the factor but concluding that no law was favored under it). The factor is generally not implicated if the state whose law is to be applied has "sufficient contacts with and interest in the facts and issues being litigated." Myers v. Gov't Empoyees Ins. Co., 225 N.W.2d 238, 242 (Minn. 1974). However, where a state "has little or no contact with a case and 'nearly all of the significant contacts are with a sister state,'" the factor suggests that a state should not apply its own law to the dispute. See Ralph U. Whitten, Improving the "Better Law" System: Some Impudent Suggestions for Reordering and Reformulating Leflar's Choice-Influencing Considerations, 52 Ark. L. Rev. 177, 187 (1999) (quoting Robert A. Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U. L. Rev. 267,

4

282 (1966)). With these considerations in mind, we agree that the factor points towards an application of Louisiana law because Louisiana has significant, if not all, contacts with the facts relevant to the litigation. The gas container at issue was purchased by a Louisiana resident at a Wal-Mart located in Louisiana, and the injury allegedly involving the product occurred in Louisiana, and the injured party was a Louisiana resident. The only "contact" Arkansas has to the litigation is that the defendant, Wal-Mart, has its principal place of business in the state.

The fact that Wal-Mart is an Arkansas-based corporation leads directly to the fourth Leflar factor, Arkansas's interest in the litigation. The district court concluded that Arkansas has little, if any, interest because all the events surrounding Bridgette's injuries occurred in Louisiana. Plaintiffs dispute the district court's conclusion and argue Arkansas has an important governmental interest in having its product liability laws enforced against its own corporate residents when the products they sell to others injure the residents of other states. We agree that a state has at least some interest in protecting nonresidents from tortious acts committed within the state, but even then, courts have recognized that the state's interest is only slight and does not support application of its law to the litigation. See, e.g., Kenna v. So-Fro Fabrics, Inc., 18 F.3d 623, 627 (8th Cir. 1994) (recognizing that a state where an accident occurs does not have a strong interest in providing compensation to an injured nonresident); Thornton v. Sea Quest, Inc., 999 F. Supp. 1219, 1223-24 (N.D. Ind. 1998) (stating that providing compensation to an injured plaintiff is a primary concern of the state in which the plaintiff is domiciled). The governmental interest asserted by plaintiffs is even far more tenuous. Absent some relevant connection between a state and the facts underlying the litigation, we fail to see how any important Arkansas governmental interest is significantly furthered by ensuring that nonresidents are compensated for injuries that occur in another state. The governmental interest factor does not support an application of Arkansas law.

The fifth and final factor suggests that a court ascertain which law is better, or in other words, which law makes "good socio-economic sense for the time when the court speaks." Harris, 119 F. Supp. 2d at 896 (quoting Nesladek, 46 F.3d at 740). Courts often refrain from resolving a conflict of law question based on the better rule of law factor, recognizing that states often have competing policy considerations for governing similar transactions or events in different manners such that the laws do not necessarily lend themselves to being labeled either "better" or "worse." See id.; Nesladek, 46 F.3d at 740-41. Our court has been especially hesitant to pronounce the better law when other Leflar factors point decidedly towards the application of one state's law. See Nesladek, 46 F.3d at 740-41 (refusing to determine which law was superior when other factors clearly pointed towards the application of one state's law). The Arkansas Supreme Court has said that the factor points towards the application of one law when the conflicting law is "archaic and unfair." Schlemmer, 730 S.W.2d at 219. Despite plaintiffs' criticisms of Louisiana law, it certainly is not capable of being tagged with such a harsh label. Because our subjective view of which law represents the more reasoned approach would not persuade us that Arkansas law should apply in light of the considerations already discussed, we too decline to address the factor any further.

### III.

Based on our consideration of Leflar's choice-influencing factors, we conclude that the district court was correct in applying Louisiana law to plaintiffs' products liability claims. We have considered plaintiffs' remaining arguments, including their contention that an application of Louisiana law violates the Privileges and Immunities and Due Process Clauses of the Constitution, and conclude they lack merit. In light of our determination that Louisiana law controls, we also find it unnecessary to reach Wal-Mart's alternative argument that plaintiffs' claims are barred by Arkansas's statute of limitations. The judgment of the district court is therefore affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.